611 F.2d 785
 Fed. Sec. L. Rep. P 97,248
James M. KEIRNAN, Plaintiff-Appellant,
v.
HOMELAND, INC., an Oregon corporation, and Otto J. Feucht,
Jr., an Individual, Defendants-Appellees,
Otto J. FEUCHT, Jr., Third-Party Plaintiff,
v.
Lyndon A. S. WILSON, Jr., Clemens Laufenberg, and Thomas W.
Dant, Jr., Third-Party Defendants.
 No. 76-1454.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 15, 1980.
 
 John J. Haugh, Portland, Or., for plaintiff-appellant.
 William B. Crow, Portland, Or., argued for defendants-appellees; William B. Crow, Miller, Anderson, Nash, Yerke & Weiner, Jack L. Orchard, Jr., Portland, Or., on brief.
 Appeal from the United States District Court for the District of Oregon.
 Before BROWNING and TANG, Circuit Judges, and TAKASUGI,* District Judge.
 BROWNING, Circuit Judge:
 
 
 1
 Dr. James Keirnan filed this action against Homeland, Inc., a real estate investment company, and its president, Otto Feucht, for securities fraud.[1] The district court dismissed the complaint after a bench trial. We affirm.
 
 
 2
 * Dr. Keirnan alleged that defendants induced him to purchase a partnership interest in the now bankrupt Golfside Apartment Company by issuing a materially misleading prospectus in violation of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10(b)-5.
 
 
 3
 Clemens Laufenberg, Homeland's salesman, showed Dr. Keirnan a prospectus forecasting an after-tax return to investors of 23.2% Per year. This forecast rested on the assumption that rents could be increased by about 4% While maintaining a vacancy rate of 5%. Further, the prospectus represented to investors that "(a) study by Homeland confirms that the (projected) rent schedule . . . is a reasonable one and competitive with similar property in the area."
 
 
 4
 When the forecast of return was made, vacancies at Golfside were approximately 30%. There was expert testimony that a reasonable prediction based on the vacancy rate in the area would have been 9% To 11%. The expert also testified that a realistic assessment at the time the prospectus was prepared would have revealed that rents could not be increased in the near future but would probably have to be decreased.
 
 
 5
 In a written statement admitted in evidence Mr. Laufenberg stated he had inspected the Golfside Apartments before presenting the investment to Dr. Keirnan, and that "the rents seemed to be high." Mr. Laufenberg's statement continued: "I became concerned in early January when Jim McCright, who was our property manager, moved into the golf course apartments adjacent to 'Golf-sides'. These were more attractive units that seemed to offer more at a lower rent. At that time it became evident to me that the 'Golf-sides' rents were unrealistic. . . . (A) little market research would have pointed out the unrealistic rent level that had (been) projected." Dr. Keirnan was not given these facts, nor was he informed of the actual vacancy rate.
 
 
 6
 As to the study described in the prospectus, Mr. Laufenberg's written statement said:
 
 
 7
 It was my impression that Homeland performed very little research prior to purchasing the "Golf-sides" apartments. They did not do any market research to speak of in the neighborhood or vicinity nor did they make a very close examination of the project other than the engineering report.
 
 
 8
 On the other hand, Laufenberg testified at trial that when he wrote this statement he was not aware of the market research that Homeland might have done; and Otto Feucht, Homeland's president, testified that before preparing the prospectus he had studied a real estate report that contained an analysis of the market condition in the relevant area. Feucht also testified that before the prospectus was prepared a Homeland employee "shopped" the other apartment buildings in the area to check their vacancy rates.
 
 
 9
 Golfside was an unprofitable investment. It was necessary to lower rents to alleviate a high vacancy rate. Consequently income was less than projected.
 
 
 10
 Based upon the conflicting evidence, the district court found that although projected maintenance expenses were reasonable when established, "the other representations made by the defendants were overly optimistic and based on inadequate research. This is particularly true on the occupancy rate which assumed increased rents. As a result, Golfside's profit potential was overstated."
 
 
 11
 Despite these findings, the district court held the complaint should be dismissed for two reasons. First, the court found the misrepresentations in the prospectus were not "deliberate", but "resulted primarily from the speed with which this proposal was put together for sale before the end of the tax year." Second, the court found Dr. Keirnan "paid little attention to the profitability projections (because) (h)e was primarily concerned with (finding) a tax shelter" and "decided to invest primarily because three other physicians, including his friend Dr. Fisher, whose judgment he respected, had invested in Golfside and not because of any representations made by the defendants."
 
 II
 
 12
 Subsequent to the decision below, the Supreme Court held in Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), that simple negligence will not support a private cause of action under section 10(b) and Rule 10b-5. The Supreme Court left undecided, however, whether liability might be based upon reckless disregard for the truth. 425 U.S. at 193-94 n. 12, 96 S.Ct. 1375. In Nelson v. Serwold, 576 F.2d 1332, 1337 (9th Cir. 1978), we answered the reserved question in the affirmative, holding that "Congress intended the ambit of § 10(b) to reach a broad category of behavior, including knowing or reckless conduct."
 
 
 13
 Since the district court decided only that defendants' misrepresentations were not "deliberate", the judgment cannot be sustained for lack of proof of the required scienter unless on the evidence a reasonable person could not have found that defendants acted recklessly. See Robesky v. Qantas Empire Airways Ltd., 573 F.2d 1082, 1086 (9th Cir. 1978).
 
 
 14
 The defendants acted recklessly if they had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although they could have done so without extraordinary effort. See Lanza v. Drexel & Co., 479 F.2d 1277, 1306 n. 98 (2d Cir. 1973) (en banc); Cohen v. Franchard Corp., 478 F.2d 115, 123 (2d Cir. 1973).
 
 
 15
 The occupancy rate of Golfside and the rental rates in comparable projects in the area were readily ascertainable. It would not have been unreasonable for the trial court to have found that the defendants acted recklessly by failing to inform Dr. Keirnan of the actual vacancy rate at Golfside and by failing to investigate more thoroughly rental and vacancy rates of comparable properties in the area before issuing a prospectus predicting so low a vacancy rate at increased rent and, consequently, so high a rate of return.
 
 III
 
 16
 On the issue of reliance the district court wrote:
 
 
 17
 Keirnan knew that the figures in the prospectus were mere projections. He concedes that he paid little attention to the profitability projections in the prospectus. He was not looking for a conservative investment. He was primarily concerned with a tax shelter for some of his sizable income. Keirnan decided to invest primarily because three other physicians, including his friend Dr. Fisher, whose judgment he respected, had invested in Golfside and not because of any representations made by the defendants. Substantial reliance is necessary for recovery in a 10(b)-5 case. List v. Fashion Park, Inc., 340 F.2d 457 (2d Cir. 1965).[2]
 
 
 18
 Dr. Keirnan contends that the district court's approach to the reliance issue was erroneous as a matter of law, and that under the correct legal principles Dr. Keirnan was entitled to judgment.
 
 
 19
 The first step in Dr. Keirnan's argument is that reliance should have been presumed once the materiality of the omissions and misrepresentations had been demonstrated.[3] Dr. Keirnan implies that the district court imposed a heavier burden on him, requiring that he establish reliance in fact. But nothing in the district court's findings supports the thesis that the burden of proving reliance was placed on Dr. Keirnan. Rather, the court found in direct and affirmative terms that Dr. Keirnan decided to invest in the project for tax purposes and because three other physicians decided to invest in the project, and not because of the defendants' misrepresentations and omissions. It was on this basis, and not because Dr. Keirnan failed to carry the burden of proving reliance that the court found for the defendants. We need not decide whether the rule established in Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), that reliance is presumed in cases involving primarily a failure to disclose material facts, should be extended to cases such as this where affirmative misrepresentations played an equal or greater role.[4] Even if we agree with Dr. Keirnan that he established a prima facie case by showing material misrepresentations and omissions, and the requisite scienter, the district court's findings on reliance, if sustained, leave no doubt that this prima facie case was successfully rebutted. See Crocker-Citizens National Bank v. Control Metals Corp., 566 F.2d 631, 636 n. 3 (9th Cir. 1977).
 
 
 20
 The second step in Dr. Keirnan's argument is that in the circumstances of this case, the defendants cannot be permitted to rebut the prima facie showing of reliance by contrary evidence.
 
 
 21
 Dr. Keirnan develops this position separately with respect to: (1) reliance by Dr. Keirnan himself upon the misrepresentations in, and omissions from the prospectus; and (2) reliance by the three physician-investors whose investment in the project influenced Dr. Keirnan to invest.
 
 
 22
 Dr. Keirnan contends that when deception occurs in direct negotiations with the plaintiff, as it did here, causation may be disproved only by proof that the plaintiff knew the truth. "Only when the true facts are actually known to the plaintiff can it be said with any certainty that any misrepresentations or omissions were irrelevant," appellant argues, "and only in those cases should the defendant be entitled to argue lack of causation."
 
 
 23
 This is not the law. Causation may also be disproved by showing, as the trial court found here, that plaintiff did not attach significance to the misrepresented facts, and would not have attached significance to the omitted facts, and therefore would have acted as he did if he had known the truth. See Crocker-Citizens National Bank v. Control Metals Corp., supra, 566 F.2d at 636 n. 3; Arthur Young & Co. v. United States District Court, 549 F.2d 686, 695 (9th Cir. 1977); Rochez Bros., Inc. v. Rhoades, 491 F.2d 402, 410 (3d Cir. 1974); List v. Fashion Park, Inc., 340 F.2d 457, 464 (2d Cir. 1965); Note, the Reliance Requirement in Private Actions under SEC Rule 10b-5, 88 Harv.L.Rev. 584, 597-601 (1975).
 
 
 24
 Dr. Keirnan points to the district court's finding that appellant decided to invest primarily because the three other physicians invested in the project, and argues that where materially misleading statements are made to third parties on whose actions or advice the plaintiff in turn relies, the third parties' reliance on the misleading statement is presumed, and causation is established.
 
 
 25
 In support of this argument, appellant cites Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975), which holds that a purchaser of stock in the open market who claims injury because deceptive omissions from publicly issued financial reports created an inflated market price need not show personal reliance.[5] "Materiality circumstantially establishes the reliance of some market traders and hence the inflation in the stock price when the purchase is made the causation chain between defendant's conduct and plaintiff's loss is sufficiently established to make out a prima facie case." 524 F.2d at 906.
 
 
 26
 Plaintiff did not present this derivative reliance theory below with sufficient clarity to lead to the development in the record of the facts necessary to its resolution. Dr. Keirnan did not allege in his pleadings that he relied on other investors who themselves had relied on misstatements made by the defendants. Third-party reliance was not included as an issue in the pre-trial order. There was no mention of this derivative reliance theory in plaintiff's summary of the issues at the end of the trial or in his post-trial brief. Although there is an oblique reference in plaintiff's trial brief that might be interpreted as raising the possibility that other investors to whom Dr. Keirnan talked before investing might have been misled by the defendants, it is clear that as framed by the parties the reliance question focused exclusively on Dr. Keirnan's personal reliance on the prospectus.
 
 
 27
 Because Dr. Keirnan did not raise the issue of reliance by the other three investor-physicians, defendants had no reason to determine whether the third parties had relied upon any misstatements, and, if not, to offer proof of their non-reliance. It would therefore be unfair to defendants to entertain this derivative theory of causation on appeal.
 
 
 28
 Moreover, plaintiff did not prove or even allege below that the other three investor-physicians were given the same or any other misleading prospectus, or were otherwise exposed to any statement containing material misrepresentations or omissions. Thus, even if we were to agree with Dr. Keirnan that reliance by third parties should be presumed from material misstatements or omissions outside the open market situation, the burden remained on Dr. Keirnan to show that the third parties "received and arguably had read" a materially misleading prospectus, Williams v. Sinclair, 529 F.2d 1383, 1389 (9th Cir. 1975), or were in some other way exposed to materially misleading statements prior to Dr. Keirnan's reliance upon their advice or action.
 
 
 29
 Finally, Dr. Keirnan argues that the trial court's finding of non-reliance is clearly erroneous. We conclude that the finding was sufficiently supported, particularly since the trial court had an opportunity to assess plaintiff's credibility as a witness.
 
 
 30
 Affirmed.
 
 
 
 *
 Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Defendant Feucht filed a third party complaint against three other officers of Homeland, Inc. for contribution or indemnity. Upon finding for the defendants, the district court dismissed the third party complaint
 
 
 [2]
 The court stipulated that its opinion "shall constitute findings of fact and conclusions of law under Fed.R.Civ.P. 52(a)."
 
 
 [3]
 If the asserted representations and omissions existed, appellees do not dispute their materiality
 
 
 [4]
 This court has previously pointed out that the categories of "omission" and "misrepresentation" are not mutually exclusive, and has suggested reasons both for and against extending the Ute presumption of reliance to cases involving primarily affirmative misrepresentations. Little v. First California Co., 532 F.2d 1302, 1304 n. 4 (9th Cir. 1976). Other circuits have held that the Ute presumption is limited to cases involving primarily omissions, Vervaecke v. Chiles Heider, & Co., 578 F.2d 713, 715-717 (8th Cir. 1978); Rifkin v. Crow, 574 F.2d 256, 262-63 (5th Cir. 1978), while yet another court seems to have extended the presumption to affirmative misrepresentations, See Carras v. Burns, 516 F.2d 251, 257 (4th Cir. 1975). An examination of the literature reveals a similar split among the commentators, Compare, e. g. Stoll, Reliance as an Element of 10b-5 Actions, 53 Oreg.L.Rev. 169 (1974), With Note, The Reliance Requirement in Private Actions Under SEC Rule 10b-5, 88 Harv.L.Rev. 584 (1975)
 
 
 [5]
 See also Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 797 (2d Cir. 1969); Vine v. Beneficial Finance Co., 374 F.2d 627, 635 (2d Cir. 1967)