669 F.2d 1278
 Fed. Sec. L. Rep. P 98,602
Mary N. BELL, Margaret A. Stokes, Arthur Payne and Stephen
Hogue, Trustee, Plaintiffs-Appellants,
v.
CAMERON MEADOWS LAND COMPANY, a Wisconsin corporation; SF
Minerals, Inc., a Nevada corporation; Santa Fe International
Corporation, a California corporation; Jack E. Arnold, and
Paul C. Perret, Defendants-Appellees.
 No. 80-5326.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 9, 1981.
Decided Feb. 22, 1982.
 
 Major Langer, Henry B. La Torraca, Perona & Langer, Long Beach, Cal., for plaintiffs-appellants.
 Robert C. Vanderet, O'Melveny & Myers, Los Angeles, Cal., argued, for defendants-appellees; Martin Glenn, Los Angeles, Cal., on brief.
 Appeal from United States District Court for the Central District of California.
 Before SKOPIL, FARRIS and BOOCHEVER, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Plaintiffs allege the defendants violated sections 10(b)[1] and 14(e)[2] of the Securities Exchange Act of 1934, corresponding California state securities laws, and committed common law fraud, all in connection with a tender offer by which SF Minerals, Inc., a Nevada corporation, acquired Cameron Meadows Land Company, a Wisconsin corporation. The district court rejected plaintiffs' two untimely jury demands, and thereafter granted summary judgment for defendants on all claims. We reverse in part and affirm in part.
 
 I. FACTS
 
 2
 Plaintiffs are two sisters, Mary Bell and Margaret Stokes, their brother, Arthur Payne,[3] and the trustee of a trust for the benefit of Arthur Payne.[4]
 
 
 3
 The only remaining defendant is Santa Fe International Corporation, a California corporation engaged in oil and gas exploration and development. SF Minerals, Inc. is a subsidiary of Santa Fe formed to accomplish the tender offer at issue.
 
 
 4
 At the time of the tender offer, Cameron Meadows Land Company possessed only one significant asset, a large tract of oil and gas producing property in Louisiana. There were 134 shareholders and 83,300 outstanding shares. The shares were not traded publicly. During the eleven years preceding the tender offer, shares had been sold ten times for prices between thirty and fifty-five dollars.[5] Plaintiffs collectively owned 1,920 shares.
 
 
 5
 Santa Fe's tender offer to Cameron Meadows shareholders was for all outstanding shares at $186 per share, contingent upon acceptance by holders of at least 80 percent of the outstanding shares. The written tender offer document (Tender Offer) announced in bold print on the second page, "The Board of Directors of Cameron Meadows Land Company has Approved and Recommended Acceptance of the Offer." On page seven, the Tender Offer referred to a land appraisal by Paul C. Perret (Perret Report) which suggested a value per share well below the tender offer price. The Tender Offer also advised, "It is the present intention of the Purchaser, if it acquires control of the Company, to cause the Company to be liquidated and dissolved." In a separate letter accompanying the Tender Offer, Cameron Meadows president and director Jack Arnold further advised Cameron Meadows shareholders, "Your Board of Directors believes that this is an attractive offer and has unanimously recommended that all stockholders accept the offer .... Based on my twenty-five years of experience with the company (Cameron Meadows), I believe the offer is extremely fair and welcome the acquisition by a company as outstanding as Santa Fe."
 
 
 6
 The tender offer was accepted by 133 of the 134 shareholders holding 96 percent of all Cameron Meadows shares. Plaintiffs tendered all their shares, but only after the minimum of 80 percent of the outstanding shares had been tendered by other shareholders.
 
 
 7
 Plaintiffs allege in their third, fourth and fifth "causes of action" two categories of false and misleading statements: (1) misleading references in the Tender Offer to the Perret Report; and (2) failure to disclose certain dealings between Santa Fe and Cameron Meadows president Jack Arnold.[6]
 
 II. SUMMARY JUDGMENT
 
 8
 We must view the evidence and the inferences drawn therefrom in the light most favorable to plaintiffs. Gaines v. Haughton, 645 F.2d 761, 769 (9th Cir. 1981). We can affirm summary judgment only if there are no genuine issues of material fact and appellee Santa Fe is entitled to prevail as a matter of law. Dosier v. Miami Valley Broadcasting Corp., 656 F.2d 1295, 1300 (9th Cir. 1981); Fed.R.Civ.P. 56(c).
 
 
 9
 A. Federal Securities Laws Claims: Sections 10(b) and 14(e).[7]
 
 
 10
 Summary judgment must be affirmed as to each claim for which an essential element of a valid section 10(b) cause of action is missing. The essential elements at issue here are material false or misleading statements, scienter, reliance and injury.
 
 1. Material False or Misleading Statements
 
 11
 False or misleading statements are actionable only if material. Facts are considered material if there is a substantial likelihood that a reasonable shareholder would consider them important when making an investment decision. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); Little v. Valley Nat. Bank of Arizona, 650 F.2d 218, 222 (9th Cir. 1981); United States v. Margala, 662 F.2d 622, 626 (9th Cir. 1981). The district court found that plaintiffs' allegations of material misstatements lacked any factual basis. We disagree.
 
 
 12
 a. Perret Report
 
 
 13
 Plaintiffs allege that the reference to the Perret Report in the Tender Offer was misleading in that it (1) incorrectly stated that the Perret Report had estimated the fair market value for the lands and future income for oil and gas producing royalties to be $6,380,970.00, (2) incorrectly stated that Santa Fe had no reason to believe the Perret Report was materially inaccurate, and (3) failed to disclose the true purpose of the report.[8]
 
 
 14
 The full report by itself creates a genuine issue of material fact whether the reference in the Tender Offer was materially misleading. A reasonable investor might have viewed the appraisal differently had he known that the report in its cover pages expressly stated, "This report is not intended to establish a value for (Cameron Meadows) nor does it establish a basis for the sale or purchase of the corporate stock." Further, plaintiffs offered evidence indicating that Arnold had expressly directed Perret to prepare a conservative document,[9] and that a separate evaluation prepared for Santa Fe indicated total future net revenues from oil and gas production of $61,814,286.00. Considered in the light most favorable to plaintiffs, this evidence raises a genuine issue of material fact whether the reference to the Perret Report in the Tender Offer was materially misleading.
 
 
 15
 b. Arnold-Santa Fe Relationship
 
 
 16
 Plaintiffs allege Santa Fe failed to disclose (1) that prior to or during the tender offer Arnold had been promised a retainer by Santa Fe for his efforts in promoting the tender offer, and (2) that Santa Fe had drafted letters sent out over Arnold's signature encouraging acceptance of the offer.
 
 
 17
 The district court found that the evidence was uncontroverted that Santa Fe did not agree or promise to retain Arnold in exchange for his support of the tender offer. This finding was based on Arnold's deposition[10] and the affidavit of one of Santa Fe's officers. Plaintiffs presented sufficient contrary evidence to create a genuine issue.
 
 
 18
 Plaintiffs offered evidence that (1) Arnold was given a retainer at double his old salary; (2) the agreement went into effect immediately after the tender offer was closed; (3) the offer was not a surprise to Arnold, who in fact set the salary; (4) a memo by a Santa Fe officer characterized the retainer as a "continuation;" (5) Arnold's level of cooperation during the tender offer was extraordinary; (6) a consultant to Santa Fe involved in the negotiations reported to Santa Fe that Arnold would expect a two to three year retainer; (7) the consultant included such expectation in his summary of finders' fees sent to Santa Fe; (8) Santa Fe therefore had reason to believe Arnold did have such an expectation.
 
 
 19
 With respect to the failure to disclose that Santa Fe had drafted Arnold's letters promoting the tender offer, the district court found that (1) the letters were not false or misleading; (2) the decision as to the use and final wording of each letter was Arnold's; and (3) plaintiffs had presented no evidence to support a claim that the admitted fact of cooperative letter writing was material. We disagree. The letters were misleading for the very reason that they did not disclose that they were almost verbatim copies of drafts proposed by Santa Fe. As evidence of the materiality of this fact, plaintiffs offered Mary Bell's testimony to the effect that she would have acted differently had she known of the cooperative relationship between Arnold and Santa Fe. Other tendering shareholders testified to the same effect. That Arnold could exercise judgment as to the final wording of each letter does not render the fact of cooperative letter writing immaterial.
 
 
 20
 Any significant relationship between Arnold and Santa Fe was material to an evaluation of his and the other directors' positive recommendations, which presumably were material to an evaluation of the tender offer itself.
 
 2. Scienter
 
 21
 Santa Fe's argument that the plaintiffs have presented no credible evidence of scienter is similarly without merit.
 
 
 22
 Recklessness is sufficient to support section 10(b) liability. Keirnan v. Homeland, Inc., 611 F.2d 785, 787 (9th Cir. 1980); Nelson v. Serwold, 576 F.2d 1332, 1337 (9th Cir.), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). Santa Fe acted recklessly if it "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although they could have done so without extraordinary effort." Keirnan, 611 F.2d at 788. "Cases where intent is a primary issue generally are inappropriate for summary judgment unless all reasonable inferences that could be drawn from the evidence defeat the plaintiff's claims." Vaughn v. Teledyne, Inc., 628 F.2d 1214, 1220 (9th Cir. 1980) (claims stated under sections 10(b) and 14(e)).
 
 
 23
 There is sufficient evidence here to create an inference that Santa Fe acted recklessly, if not intentionally and knowingly, with respect to the various alleged material misstatements and omissions. Santa Fe had the full Perret Report in hand. It knew that it had written the initial drafts of the letters which went out over Arnold's signature without significant modification. It also knew of any retainer agreement or other material relationship it had with Arnold. All of the various alleged misstatements and omissions could have been corrected easily.
 
 3. Reliance
 
 24
 The district court found that plaintiffs did not rely on any of the alleged misstatements. Santa Fe contends that this finding was correct and by itself sufficient to support the summary judgment. We disagree. Triable issues remain on the questions of direct and indirect reliance.
 
 
 25
 A finding of nonreliance implies that plaintiffs would have acted no differently had they known the truth. See Keirnan v. Homeland, Inc., 611 F.2d at 789; Blackie v. Barrack, 524 F.2d 891, 906-08 (9th Cir. 1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); Shores v. Sklar, 647 F.2d 462, 468 (5th Cir. 1981) (en banc). Mary Bell and Margaret Stokes both testified that they read the tender offer and the accompanying letters. Mary Bell further testified that had she known of the various misstatements and omissions she would have contacted the other shareholders and the board members in an effort to resist the tender offer. From Arthur Payne and Margaret Stokes' strong preference not to sell, a trier of fact might reasonably infer that they too would have acted differently had they known of the various misstatements and omissions. Santa Fe has not shown to the contrary. Thus, notwithstanding plaintiffs' statements made during their depositions to the effect that they did not rely on any particular misstatement and in fact tendered their shares principally to avoid being left as minority shareholders in a corporation soon to be dissolved, there remains a genuine issue of material fact whether plaintiffs in their review of the Tender Offer and subsequent decision to sell relied on the truthfulness of the alleged misstatements.
 
 
 26
 Even if the uncontroverted evidence did show that plaintiffs did not rely on any of the alleged misstatements, Santa Fe would not necessarily be entitled to judgment as a matter of law.
 
 
 27
 Proof of reliance normally is adduced to demonstrate the causal connection between a defendant's wrongdoing and a plaintiff's loss. See Blackie v. Barrack, 524 F.2d at 906; Sharp v. Coopers & Lybrand, 649 F.2d 175, 186 (3d Cir. 1981); Wilson v. Comtech Telecommunications Corp., 648 F.2d 88, 92 (2d Cir. 1981). Proof of reliance has not been required where unnecessary to establish causation. See Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 1476-73, 31 L.Ed.2d 741 (1972); Blackie v. Barrack, 524 F.2d at 905-06; Arthur Young & Co. v. United States Dist. Court, 549 F.2d 686, 694-95 (9th Cir.), cert. denied, 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977). The chain of causation will be no less complete here, if, as plaintiffs allege, the misstatements and omissions caused other shareholders to tender 80 percent of the outstanding shares, and the success of the tender offer caused plaintiffs (and all but one other holdout) to tender their shares as well. Cf. Shores v. Sklar, 647 F.2d at 468-72. The success of plaintiffs' theory of indirect reliance will depend on the resolution of genuine issues of material fact.[11]
 
 4. Damages
 
 28
 The district court found that there was no credible evidence that plaintiffs sold their shares at below market value. The evidence of both sides on this issue is poorly developed and unpersuasive. Though ultimately the burden of proof will be on plaintiffs, summary judgment based on this issue is inappropriate at this time because Santa Fe has not shown that there is no genuine issue of material fact on the question.
 
 
 29
 Plaintiffs offered evidence that Arnold suggested a value of $300 per share during the early stages of the negotiation. Arnold testified he was not serious at the time. A financial analyst testified for plaintiffs that the total value of the Cameron Meadows assets was approximately $38,320,474. This witness did not fare well on cross-examination; apparently he applied insufficient discounts to "possible" oil and gas reserves on the basis of admittedly incomplete information. On the other hand, Santa Fe's evidence on the issue is no more persuasive. The low prices for which shares were sold during the eleven years preceding the tender offer might indicate no more than that the sellers were unaware of the fair market value of the Cameron Meadows assets. Arnold's alleged inability just prior to the tender offer to solicit purchase offers from three other entities proves nothing; such entities could have declined for any number of reasons unrelated to value and price. Santa Fe relies on the testimony of one of its officers, raising a question of bias, and on the deposition of Arnold, raising a credibility question. The recommendation of the Cameron Meadows board of directors is arguably less than conclusive since they were on the board at Arnold's invitation and acted on his advice.
 
 5. Summary: Federal Securities Laws Claims
 
 30
 With respect to the federal securities laws claims stated in plaintiffs' third, fourth, and fifth "causes of action," numerous genuine issues of material fact remain to be resolved at trial. These include whether the reference to the Perret Report in the written Tender Offer was materially misleading, whether Arnold was given a retainer or other compensation in exchange for his support of the tender offer, whether the fact of cooperative letter writing or any other contact between Arnold and Santa Fe was material and not disclosed, whether Santa Fe acted with the required scienter, and whether the tender offer price was below fair market value. Santa Fe has not shown that any essential element of these claims is missing. We reverse the summary judgment as to plaintiffs' third, fourth, and fifth causes of action.
 
 B. State Law Claims
 
 31
 California Corporations Code Section 25401 tracks the language of section 10(b) of the Securities Exchange Act of 1934. Plaintiffs' claims under section 25401 are based on the same factual allegations as are their parallel federal claims. Summary judgment on plaintiffs' section 25401 claims, therefore, must be reversed for the same reasons and to the same extent that we reverse with respect to the federal securities laws claims.
 
 
 32
 Because a genuine issue of material fact whether plaintiffs actually relied on Santa Fe's alleged misrepresentations remains to be resolved, Santa Fe also has not met the requirements of Fed.R.Civ.P. 56 with respect to plaintiffs' common law fraud claims. Summary judgment is reversed as to these claims as well.
 
 
 33
 We find no merit to plaintiffs' other state law claims.
 
 III. DENIALS OF JURY DEMANDS
 
 34
 By failing to make their first jury demand within 10 days after the last pleading had been served, plaintiffs waived their rights to a jury trial. Fed.R.Civ.P. 38(b), (d). Plaintiffs contend the trial court erred when denying their two motions for Rule 39(b) relief.[12] We review for abuse of discretion. Chandler Supply Co. v. GAF Corp., 650 F.2d 983, 987 (9th Cir. 1980).
 
 
 35
 We have strictly applied Civil Rules 38 and 39. See id. (an untimely request must be denied unless some cause beyond mere inadvertence is shown); Mardesich v. Marciel, 538 F.2d 848, 849 (9th Cir. 1976) (Where the only reasons advanced are oversight or inadvertence, the trial court has "virtually no discretion to exercise.").
 
 
 36
 Here the uncontroverted affidavit of plaintiffs' counsel indicates the jury demand was filed fifty days late because the attorney then in charge of the case was preoccupied with the impending dissolution of his law firm. The affidavit does not set forth details of any disruption or confusion or other cause for preoccupation. The affidavit also fails to explain why assisting counsel, such as affiant, who drafted the complaint, did not detect the oversight and file a demand before the deadline had passed. Further, the affidavit is not supported by an affidavit of the then lead attorney. We find no abuse of discretion in the district court's rejection of plaintiffs' first untimely jury demand.
 
 
 37
 The second demand for a jury trial was made after plaintiffs were granted permission to amend their complaint. It was not error to deny this demand. The amended complaint did not raise new issues. See Pradier v. Elespuru, 641 F.2d 808, 810 n.1 (9th Cir. 1981); Lanza v. Drexel & Co., 479 F.2d 1277, 1310 (2d Cir. 1973).
 
 IV. CONCLUSION
 
 38
 We reverse summary judgment as to plaintiffs' 1) third, fourth, and fifth "causes of action," 2) claims stated under California Corporation Code § 25401, and 3) claims for common law fraud. Summary judgment for defendant Santa Fe on all other claims is affirmed. The denials of plaintiffs' jury demands are affirmed.
 
 
 39
 AFFIRMED IN PART and REVERSED IN PART.
 
 
 
 [1]
 Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) provides that it shall be unlawful for any person:
 To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 Rule 10b-5, 17 C.F.R. § 240.10b-5, provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
 
 
 [2]
 Section 14(e), 15 U.S.C. § 78n(e), provides:
 It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.
 
 
 [3]
 Deceased and replaced in this action by Gesa Payne, executrix of his estate
 
 
 [4]
 Stephen Hogue, successor to Mary Bell, who held the position during the tender offer period
 
 
 [5]
 During the same period shares were conveyed by intervivos gift or testamentary transfer thirty times, with valuations never higher than fifty dollars
 
 
 [6]
 Plaintiffs allege numerous other misstatements and omissions in their first, second, and sixth claims (mislabeled "causes of action"). Summary judgment clearly was appropriate as to these claims for the reasons stated by the district court in its lengthy Findings of Fact and Conclusions of Law. Each alleged misstatement was either never made or not false when made. The allegations of material omissions are similarly without evidentiary support
 
 
 [7]
 We discuss 10(b) and 14(e) together because the differences between the two sections are not pertinent to the issues raised on appeal
 
 
 [8]
 The Perret Report included the following statement of purpose:
 This study was initiated at the request of Mr. Jack Arnold, President CMLC, with approval of the Board of Directors. The understood purpose of the study is to establish a value range for those lands, and to establish anticipated future income from oil and gas royalties to be used as a basis for fiscal planning and to establish the future economic course of the Company.
 This report is not intended to establish a value for the Company, nor does it establish a basis for the sale or purchase of the corporate stock. It is intended only for the purpose stated above.
 The conclusion of the report did include estimated fair market values for producing and nonproducing oil and gas interests totalling $4,685,920, and also included low and high values for salt and surface interests, the averages of which totalled $1,695,050.
 The Tender Offer summarized the Perret Report as follows:
 In June 1977, the Company commissioned Paul C. Perret of New Orleans, Louisiana, a petroleum geologist (specializing in valuations, reserve estimates and economic studies as they pertain to the petroleum industry) to establish a value for the lands and future income for oil and gas royalties. Mr. Perret has estimated the fair market value of the Company's producing and nonproducing interests to be $4,685,920 and the value of the land at $1,695,050 for a total value of $6,380,970 as of July 1, 1977. The foregoing figure includes a value for the unleased minerals of the Company which Mr. Perret believes to be reasonable. A copy of Mr. Perret's report is on file at the Company's offices in Eau Claire. In the opinion of the Company's management, there has been no event or development since July 1, 1977, which would significantly change the valuation arrived at by Mr. Perret.
 The Purchaser did not have access to the Perret report prior to proposing its offer of $186 per share to representatives of the Company. The Purchaser has no reason to believe that Mr. Perret's report is materially inaccurate. However, any such report is in some respects speculative because estimating the value of land and oil and gas properties is always difficult and is not a precise science.
 The thrust of plaintiffs' argument is that the Tender Offer invited Cameron Meadows shareholders to rely on the Perret Report as an independent assessment of the fair market value of their shares, without disclosing material information casting doubt on the usefulness of the report for such a purpose.
 
 
 [9]
 There is some suggestion in the record that Arnold may have desired a low appraisal to defend his recent purchase of 2,200 shares of Cameron Meadows stock at $50/share. Additionally, tax considerations may have been a motivating factor, inasmuch as the initial contact with Perret stemmed in part from a perception of certain tax problems
 
 
 [10]
 Arnold's credibility was drawn into question at least twice during his deposition. In each case Arnold had understated the relationship between himself and Santa Fe
 
 
 [11]
 Santa Fe correctly argues that it can defend by proving nonreliance. See Blackie v. Barrack, 524 F.2d at 906; Arthur Young & Co. v. United States Dist. Court, 549 F.2d at 695; Keirnan v. Homeland, Inc., 611 F.2d at 789. However, as already noted, Santa Fe has not shown that plaintiffs would not have acted differently had they known the truth. Nor has Santa Fe shown that the tendering shareholders did not rely, or that plaintiffs would have tendered even if the tender offer could not have been successful without their cooperation
 
 
 [12]
 Plaintiffs filed a Rule 38(b) jury demand on two occasions. Each was answered with a motion to strike for reasons of untimeliness, and each time plaintiffs then moved for Rule 39(b) relief. In both instances, the district court in a single order denied the requested relief and struck the late jury demand. Plaintiffs' notice of appeal encompasses both district court orders, but their opening brief includes only the second in the statement of issues, and makes no mention of either in the argument. Plaintiffs' reply brief completely disregards the issue