William FRESCHI, Jr., as Trustee of
William Freschi Trust, Plaintiff,

v.

GRAND COAL VENTURE, Bandler &
Kass, Ground Production Corporation,
William J. Werner, Jack Mitnick, Rob-
ert Sylvor, William C. Sherr, Mineral
Resources Development, Inc., and H.
Jean Baker, Defendants.

No. 81 Civ. 4331 (RWS).

United States District Court,
S.D. New York.

March 23, 1984.

Layton, & Sherman, New York City, Bowker, Elmes, Perkins, Mecsas & Gerrard, Boston, Mass., for plaintiff; Thomas L. Abrams, New York City, and Robert C. Gerrard, Edward N. Perry, Elizabeth A. Zeldin, Boston, Mass., of counsel.

Schwarzfeld, Arnoff & Shore, P.C., New York City, for defendants; Neal Schwarzfeld, Alan C. Fried, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendants Grand Coal Venture ("Grand Coal"), Bandler & Kass ("Bandler & Kass"), Ground Production Corporation ("Ground Production"), William J. Werner ("Werner"), Jack Mitnick, Robert Sylvor ("Sylvor"), Mineral Resources Development, Inc. ("Mineral") and H. Jean Baker ("Baker") (collectively, "defendants")[1] have once again moved for summary judgment, this time against all claims in the second amended complaint of plaintiff William Freschi, Jr. ("Freschi"), as trustee of the William Freschi Trust. Alternatively, defendants have moved to stay this action because damages are still uncertain, and to disqualify Freschi's counsel, Bowker, Elmes, Perkins, Mecsas & Gerrard ("Bowker"), if this action proceeds. Freschi has moved for leave to file a third amended complaint that would add a count based on the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961–1968 ("RICO"). For the reasons given below, defendants' summary judgment is granted to the extent stated herein, the disqualification motion is denied, the motion for a stay is granted to the extent stated herein, and Freschi's motion is denied. The facts and prior proceedings in this action are set forth in decisions dated February 1, 1983, 564 F.Supp. 414, September 18, 1982, 551 F.Supp. 1220, May 26, 1982 and August 7, 1981, and familiarity with those decisions is assumed.

### Section 10(b) Claims

Defendants have moved for summary judgment against Freschi's claim under § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), contending that (1) none of the misrepresentations Freschi has alleged are material, (2) even if they are, Freschi did not rely on them, and (3) even if he did, the statute of limitations bars this claim.

Freschi has pointed to numerous misrepresentations by defendants which he alleges to create a fact question on his claim under § 10(b). However, in this motion, Freschi has emphasized five of these misrepresentations. Those five are:

(1) The failure to disclose that Werner had been served with a restraining order by the Securities and Exchange Commission ("the Injunction") because of his participation in the offerings by Cal-Am Corporation ("Cal-Am") and the Cambridge Corporation.

(2) The failure to disclose that Joseph R. Laird, Jr. ("Laird") who owned Cal-Am and was named in the Injunction, was to receive 40% of the advance minimum royalty payments made to Ground Production.

(3) The failure to disclose that Baker, who signed the preliminary geologist's report for Grand Coal as president of Mineral, was not a geologist.

(4) The failure to disclose that Grand Coal's coal leases had been supplied by Baker, who had previously supplied Laird companies with coal leases, and that Baker supplied the leases through Tristar Coal Corp. ("Tristar"), which Freschi contends was affiliated with Laird, and that Laird's coal leases had rarely if ever produced coal.

(5) The failure to disclose that the Grand Coal tax opinion was prepared by a former law partner of Werner.

■ There is a question of fact as to the materiality of items 1 and 2 above. Both items related to a December 8, 1977 temporary restraining order that, in its first part, enjoined Laird, Cal-Am, Cambridge Corp. and their "officers, agents ... attorneys and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise" from violating §§ 5(a) or 5(c) of the Securities Act by offering for sale interests in limited partnerships or investment contracts involving the lease of coal property, unless a registration statement

---

1. Defendant William C. Scherr does not join in this motion.

has been filed. The first part exempted offerings that came within § 4(2) of the Securities Act, the private placement exemption. In its second part, the order enjoined the same persons from employing any fraudulent scheme to offer for sale any security referred to in the first part. The Injunction was served on Werner and Bandler & Kass.

In December 1977, Freschi learned of a coal tax shelter called Spruce Productions, Inc. ("Spruce"), the principals of which were Werner, Sylvor and others. After sending his agent to briefly investigate Werner, Freschi delivered $130,000 to Werner to purchase an interest in Spruce. On December 8, 1977, the Injunction was entered, and Bandler & Kass withdrew Spruce and decided to offer Grand Coal, which was designed as a private placement that would therefore not violate the Injunction. The stockholders of Grand Coal were the same as those of Spruce. On December 15, 1977, according to Freschi's affidavit, Werner told Freschi that the Spruce offering was being withdrawn because it did not comport with requirements of the Internal Revenue Service ("IRS").

According to Freschi's affidavit, which defendants have not disputed, Werner told Freschi that Grand Coal was identical to Spruce except for certain modifications to meet IRS objections. In fact, there were other differences between the offerings, including the facts that Spruce involved a lease to each investor of a specific parcel of property, while Grand Coal involved an undivided interest held by all investors, and the fact that Spruce provided that the offeror would represent the investor in a tax audit, while the Grand Coal offering provided that the investor would bear such litigation costs.

The property for Grand Coal was provided by Tristar. Laird has stated that he had no ownership interest in Tristar. However, Richard Knox, an officer of Tristar, stated at his deposition that Laird caused Tristar to be incorporated, that, as an officer of Tristar, he received his salary from Laird; that the Tristar offices were located at the offices of Cal-Am; and that Laird directed Tristar's operations and Laird personally arranged for substitute leases for Grand Coal.

"The basic test of 'materiality' ... is whether 'a reasonable man would attach importance [to the fact misrepresented] in determining his choice of action in the transaction in question.' " *List v. Fashion Park, Inc.*, 340 F.2d 457, 462 (2d Cir.), *cert. denied,* 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). "Account must be taken of all the surrounding circumstances to determine whether the fact under consideration is of such significance that a reasonable investor would weigh it in his decision whether or not to invest." *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 363 (2d Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973).

Defendants' failure to disclose the existence of the Injunction, the fact that it had been served on Werner and Bandler & Kass and Laird's connection to Grand Coal present issues of materiality. In the papers submitted on this motion, defendants have argued that the Grand Coal offering came within the private placement exemption, which is defined in Securities and Exchange Commission Rule 146, and thus did not come within the terms of the Injunction. However, defendants have offered no proof as to, for example, Rule 146(d)'s requirements concerning the nature or identity of the offerees, or Rule 146(c)'s requirement of an absence of general solicitation or advertising. More importantly, even if the Grand Coal offering came within the private placement exemption, the fact that Werner, an offeror of Grand Coal, Werner's law firm, and Laird, who was closely involved with the offering, had been enjoined, just before Freschi invested in Grand Coal, from selling investment contracts involving coal leases might well be sufficiently material to withstand this motion for summary judgment. In this connection, it is worth noting that item 16(e) to Form S–1 in effect at the time of the offering required disclosure of the fact that any

director or executive officer of the registrant had been enjoined from "engaging in or continuing any conduct or practice . . . in connection with the purchase or sale of any security" in the previous ten years.

■ However, items 3 and 5 are not material. Item 3 is the failure to disclose that Baker was not a geologist. The mere fact that Baker, who signed the report not individually but in his capacity as president of Mineral, was not a geologist, is not so significant that a reasonable investor would have attached importance to it. The same is true of the fact that the Grand Coal tax opinion found in the Grand Coal offering memorandum ("Offering Memorandum") was written by a former law partner of Werner's. Freschi did not receive the Offering Memorandum until months after the investment decision was made. Even if Freschi relied on the opinion, he has not alleged that it contained any inaccuracy. Accordingly, this fact is not material.

■ I have found that some of the alleged misrepresentations may be material. However, defendants contend that, even if this is true, Freschi did not rely on these facts. Defendants contend that Freschi was interested only in the tax aspects of Grand Coal—not in its potential for profit—and thus he would not have relied on the misrepresentations at issue, which, defendants contend, relate solely to Grand Coal's profit potential.

When an omissions is material, "positive proof of reliance is not a prerequisite to discovery." *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472–73, 31 L.Ed.2d 741 (1972). A defendant may rebut the *Ute* presumption, however, by demonstrating that there was no reliance—that even had the material facts been disclosed, plaintiff's investment decision would have been the same. *See Shores v. Sklar,* 647 F.2d 462, 468 (5th Cir.1981), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983); *Rochez Bros., Inc. v. Rhoades,* 491 F.2d 402, 410 (3d Cir.1974), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976). The

court in *Keirnan v. Homeland, Inc.,* 611 F.2d 785, 788–89 (9th Cir.1980), applied this rule and held that where the district court had found, after a trial, that plaintiff had invested primarily for tax purposes, defendants had rebutted the presumption that plaintiff, because certain misrepresentations defendants had made to him concerning profit potential were conceded to be material, had relied on those misrepresentations.

Freschi has testified that he invested in Grand Coal with the dual motives of making a profit and receiving tax benefits. This creates a fact question as to nonreliance and thus makes summary judgment inappropriate. "We have repeatedly stated that summary judgment is particularly inappropriate where . . . it is sought on the basis of 'the inferences which the parties seek to have drawn [as to] questions of motive, intent, and subjective feelings and reactions.'" *Friedman v. Meyers,* 482 F.2d 435, 439 (2d Cir.1973). This also distinguishes *Keirnan,* where the court found *after a trial* that plaintiff was primarily interested in tax aspects of the transaction. In addition, even were the court to find that Freschi invested only for tax reasons, the failure to disclose the Injunction and Laird's participation in the offering might still be relevant to the likelihood that the offering would produce the desired tax benefits.

■ Defendants also contend that because Freschi communicated with no defendants other than Werner, the other defendants can at best be liable as aiders and abettors, and that the complaint does not specifically allege secondary liability on the part of these defendants in compliance with Fed.R.Civ.P. 9(b). While greater specificity would be desirable, the defendants here are the principals of the entity in which Freschi invested, and this is not a situation where the complaint does not permit defendants to frame a meaningful response. *Cf. Goldberg v. Meridor,* 81 F.R.D. 105, 111 (S.D.N.Y.1979); *Kirshner v. Goldberg,* 506 F.Supp. 454, 458–59 (S.D.N.Y.1981).

Finally, defendants argue that that statute of limitations bars this action because the Offering Memorandum, which Freschi received in March 1978, should have put Freschi on notice of the fraud, and he then had a duty to investigate the offering. Defendants point out that Freschi knew in early 1978 that more than $500,000 of the proceeds of the offering would go to Ground Production, and that the Offering Memorandum stated that there was no assurance as to the amount of coal on the leased property, that the investment was highly speculative, and that there was no assurance that the IRS would permit the desired deductions. On the question of his investigative efforts, Freschi notes that he met with the defendants' agent five times to discuss the offering, had his agent visit the Bandler & Kass office, received letters from defendants and met and talked by telephone with several of the defendants in mid-1978.

In extreme circumstances, summary judgment is appropriate on the question of when the statute of limitations in a § 10(b) action begins to run. *See Arneil v. Ramsey*, 550 F.2d 774, 781 (2d Cir.1977); *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir.1975). However, "[i]ssues of due diligence and constructive knowledge depend on inferences drawn from the facts of each particular case—similar to the type of inferences that must be drawn in determining intent and good faith," on which "summary judgment is particularly inappropriate." *Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir.1979). As this court stated in its September 28, 1982 opinion,

> Whether the "possibility of fraud should have been apparent," *Klein v. Shields & Co.*, 470 F.2d 1344, 1347 (2d Cir.1972) or whether "suspicions ... would have prompted a man of reasonable diligence to conduct further investigations," *Klein v. H.N. Whitney, Goadby & Co.*, 341 F.Supp. 699, 702 (S.D.N.Y. 1971), are issues of fact. This court cannot decide as a matter of law when Fres-

chi discovered or should have discovered defendants' allegedly fraudulent scheme.

Defendants contend that a duty to investigate may have arisen from the inception of Freschi's investment in Grand Coal. They point to the Offering Memorandum which mentioned the high risk involved in the investment and warned that there were no assurances as to either the amount of coal, if any, in the property or the extent to which the IRS would allow the anticipated deductions, if at all. Again, this court cannot conclude as a matter of law that Freschi should have suspected fraud because the investment was high risk and there was no certainty as to its returns.

*Freschi v. Grand Coal Venture*, 551 F.Supp. 1220, 1226 (S.D.N.Y.1982).

For these reasons, defendants' motion for summary judgment on the § 10(b) claim is granted to the extent stated herein and otherwise denied.

**State-Law Fraud**

Defendants contend that the statute of limitations bars Freschi's claim for state-law fraud, that Freschi did not meet his duty under New York law to investigate the investment, and that the defendants other than Werner cannot be held liable on this claim because they were not in privity with Freschi since they did not communicate with him.

The three-year California statute of limitations applies to this fraud claim, for reasons given in the September 28, 1982 opinion. The parties agree that the statute begins to run at the same time the statute for the § 10(b) claim does—after Freschi should have been on notice of the fraud. The analysis of this issue under the § 10(b) claim thus applies here, and this ground for defendants' motion is rejected for the reasons given in the discussion of that claim. The same is true of the requirement of investigation of the investment.

Defendants have cited no New York case holding that each person alleged to have participated in a fraud is not liable unless he individually communicated with

the plaintiff. *Steinberg v. Guild*, 23 A.D.2d 750, 258 N.Y.S.2d 670, 671 (1st Dep't 1965), is inapplicable because it involved a claim of fraud between defendants and a third party, unlike the claims here which involve an alleged fraud by the defendants against the plaintiff. *Atlantic Bank of New York v. Sutton Associates, Inc.*, 36 A.D.2d 943, 321 N.Y.S.2d 380, 381 (1st Dep't 1971), which dismissed a claim by a plaintiff who had dealt only with a co-plaintiff, is similarly inapplicable. It has also been held that New York has a cause of action for aiding and abetting a common law fraud. *Aeronca, Inc. v. Gorin*, 561 F.Supp. 370, 375–76 (S.D.N.Y.1983). Freschi has presented sufficient facts concerning the other defendants' participation in or aiding and abetting of the alleged fraud to withstand this motion for summary judgment. *See First National Bank v. Level Club*, 241 App.Div. 433, 272 N.Y.S. 273, 283 (1st Dep't 1934).

## Breach of Contract

Defendants have also moved for summary judgment on Freschi's claim for breach of contract. Freschi contends that Werner told him that Grand Coal would be virtually identical to Spruce, and concerning the latter there had been a warranty of economically recoverable coal reserves. Freschi also contends that the provisions regarding recoverable coal in the lease between Tristar and Ground Production were incorporated by reference into the lease between Ground Production and Grand Coal. Defendants deny that the documents have the contractual effect Freschi contends.

In the September 28, 1982 opinion, considering defendants' previous summary judgment motion on the contract claim, I stated "I conclude that there are genuine issues of fact as to the nature of defendants' contractual obligations." 551 F.Supp. at 1230–31. Defendants have presented no new evidence or argument to dispel these factual issues. Accordingly, defendants' motion is denied.

## Legal Malpractice

Defendants have also moved for summary judgment against Freschi's claim for legal malpractice. Freschi contends that Bandler & Kass, Werner, Sylvor and Sherr, in responding to a letter from the California Department of Corporations, failed to disclose the relationship between TriStar and Grand Coal, which were named in the letter, and Laird and Werner, who had been subjects of the Injunction. Freschi also contends that the defendants failed to notify him of the IRS audit of Grand Coal and failed to take measures to satisfy the IRS's concerns about Grand Coal by undertaking to obtain valuable coal leases for Grand Coal. In addition, Freschi contends that had Werner properly performed the tasks of obtaining the North Dakota property and the substituted properties in Wyoming, he would have assured that the properties leased to Grand Coal contained coal.

I stated in the February 1, 1983 opinion that, even on the record at the time, there were genuine issues of fact concerning the legal malpractice claim. These issues remain, particularly concerning the establishment of the relationship and the element of a legal malpractice claim that, but for the malpractice, Freschi would have proceeded in a different manner. For this reason, defendants' motion is denied.

## Disqualification of Bowker

Defendants have, for the third time, moved to disqualify Bowker from representing Freschi. In the February 1, 1983 opinion, this court discussed the disqualification issue thoroughly, and stated that "At this stage of the proceedings the balance of hardships tips in favor of Freschi. If at some point down the road it appears that continuing representation of Freschi by the Bowker firm will prejudice any party to this action, the disqualification motion may be renewed." at 418. Discovery has taken place since that opinion, but the new facts that have come to light are not sufficient under the standard set out in the February 1 opinion to call for the granting of defendants' motion.

## Motion to Amend the Complaint

Freschi has moved to amend the complaint to add a RICO claim. While leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), "if a complaint ... would be subject to a motion to dismiss under Rule 12(b)(6) ..., it would be an idle move for the court to allow such amendment ... Accordingly, leave to amend may be properly denied." J. Moore, *3 Moore's Federal Practice* ¶ 15.08[4] at 15–109.

The RICO claim is subject to a motion to dismiss. RICO provides a private right of action for treble damages to anyone injured "by reason of" a violation of the substantive section of the statute, 18 U.S.C. § 1962. The Court of Appeals in this Circuit has set forth the two pleading burdens imposed upon a plaintiff seeking to state a claim for damages under civil RICO. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983). The plaintiff must first allege adequately that defendant has violated the substantive RICO statute, § 1962, commonly known as "criminal RICO," before turning to the second burden of alleging that he was injured in his business or property *"by reason of* a violation of section 1962." *Id.* The complaint in this action is defective at the second level of inquiry.

█ The applicable language for the alleged violation in the instant case prohibits any person who has received income derived, directly or indirectly, from a "pattern of racketeering activity" from using such income or the proceeds of such income in the acquisition, establishment or operation of an enterprise, 18 U.S.C. § 1962(a); from acquiring control of an enterprise through a "pattern of racketeering activity," 18 U.S.C. § 1962(b); from conducting the affairs of that enterprise through a "pattern of racketeering activity," 18 U.S.C. § 1962(c); or from conspiring to violate any of the three previous sections. 18 U.S.C. § 1962(d). "Enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4). A "pattern of racketeering activity" is defined as the commission of two or more specific criminal acts within a ten-year period, including mail and wire fraud and fraud in the sale of securities. 18 U.S.C. § 1961(5).

Turning to the facts of this action, the proposed RICO claim would allege that defendants, in order to defraud Freschi, disseminated false information to him by mail and by wire, and that these acts constitute indictable offenses under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). Freschi also contends that defendants circulated offering materials containing false information in violation of the Securities Exchange Act of 1934. Since each of these acts may constitute a predicate act for purposes of establishing a "pattern of racketeering activity," Freschi has adequately alleged the necessary predicate acts. 18 U.S.C. § 1961(5).

█ Freschi contends that the "enterprise" in this case is the association of the defendants for the purposes of defrauding Freschi and other investors and the organization of the various business entities through which the fraud was perpetrated— Ground Production, Spruce and Grand Coal. This adequately alleges an "enterprise" under § 1961(4).

█ However, the proposed amended complaint fails to allege an injury "by reason of" a § 1962 violation. Although there is division among the Circuits on what constitutes such an injury, a growing number of courts, including this one, have required something more than direct injury from the predicate acts, or a "racketeering enterprise injury," as the only meaningful limitation which can be imposed on the private treble damage provision. In *Harper v. New Japan Securities International, Inc.*, 545 F.Supp. 1002 (C.D.Cal.1982), the California district court noted that:

Only if this causal connection [between the alleged injury and the kind of injury RICO was intended to prevent] exists

will the policies and purposes of RICO be served by permitting a private right of action. This construction, while avoiding the imposition of the antitrust requirement of "competitive injury," recognizes the similarities between the RICO treble damages provision and § 4 of the Clayton Act. In light of Congress' failure to provide any direction in determining the rules of standing appropriate to the RICO treble damage provision, the antitrust analogy is the construction of the statute which is most likely to reflect Congress' understanding of the words "by reason of."

*Id.* at 1008. *E.g., Kaufman v. Chase Manhattan Bank,* 581 F.Supp. 350 at 358 (S.D. N.Y.1984); *Hudson v. LaRouche,* 579 F.Supp. 623 at 630 (S.D.N.Y.1983); *Gitterman v. Vitoulis,* 579 F.Supp. 423 at 427 (S.D.N.Y. Sept. 28, 1983); *Richardson v. Shearson/American Express Co., Inc.,* 573 F.Supp. 133, 136 (S.D.N.Y.1983); *Waste Recovery Corp. v. Mahler,* 566 F.Supp. 1466 (S.D.N.Y.1983); *Bankers Trust v. Feldesman,* 566 F.Supp. 1235 (S.D.N.Y.1983); *Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co.,* 527 F.Supp. 206, 208 (E.D.Mich.1981). See also *Moss, supra,* 719 F.2d at 20 n. 16, where the Second Circuit did not reach the question of what type of injury is required by § 1964(c) because plaintiff failed to establish the requisite predicate acts, but the Court italicized the words "by reason of" for emphasis. *But cf. Schacht v. Brown,* 711 F.2d 1343, 1358 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983); *Mauriber v. Shearson/American Express,* 567 F.Supp. 1231, 1240 (S.D.N.Y.1983). In the instant case, Freschi has alleged no facts to support injury "by reason of" other than that resulting from the alleged predicate acts themselves. For this reason, the RICO cause of action fails to state a claim, and the motion to amend is therefore denied.

**Motion to Stay the Action**

Defendants have moved to stay this action pending settlement of Freschi's father's dispute with the IRS concerning the deductions for Grand Coal. Freschi opposes this motion, contending that the IRS will prevail in the dispute and that, even if Freschi prevails (and is able to take the deduction), his damages should not be reduced by the amount of the deduction.

 The value of tax deductions taken for an investment that is the subject of a private securities fraud action must be taken into account in determining plaintiff's damages, since those damages are strictly compensatory. *Smith v. Bader,* 83 F.R.D. 437, 439 (S.D.N.Y.1979); *Austin v. Loftsgaarden,* 675 F.2d 168, 181–83 (8th Cir.1982). In his 1977 return, Freschi took a deduction of $520,000 for Grand Coal royalty payments. The IRS disallowed this, permitting only an ordinary deduction of $266,500. In 1978, Freschi also took a $520,000 deduction, but the IRS did not permit any deduction. Freschi testified at his deposition that the disallowance is currently being challenged. At stake in the challenge are the deductions themselves as well as almost $300,000 in interest for tax owed.

In deciding whether to stay an action before it, a court "must weigh competing interests and maintain an even balance.... [T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. North American Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). A favorable disposition of the tax dispute might well materially affect Freschi's damages. However, this is a 1981 case in which there has been extensive motion practice and discovery. Although, in circumstances similar to these, one court has held that the interests of justice call for a stay pending settlement of the tax litigation, *see Mastan Co. v. Jackson,* 321 F.Supp. 865, 867 (N.D.Ill.1971), I conclude that the uncertainties of an initial determination should not control the disposition of this action. Any further discovery will be

completed by May 7 and the pretrial order submitted by May 14, 1984.

IT IS SO ORDERED.