**Kenin M. SPIVAK, et al., Plaintiffs,**

**v.**

**PETRO–LEWIS CORPORATION, et al., Defendants.**

**Sidney BROOKMEYER, Claire Merrit and Sonny Merrit, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**PETRO–LEWIS CORPORATION, et al., Defendants.**

**Civ. A. Nos. 86–C–2215, 86–C–1605.**

United States District Court, D. Colorado.

Dec. 28, 1987.

As Amended July 1, 1988.

Final Judgment and Order July 1, 1988.

Albert B. Wolf, James A. Shpall, Wolf & Slatkin, P.C., Denver, Colo., Wolf Haldenstein Adler, Freeman & Herz, Daniel W. Krasner, Fred Taylor Isquith, David A.P. Brower, Peter C. Harrar, Wolf, Popper, Ross, Wolf & Jones, Lester Levy, Sherrie Brown, New York City, for plaintiffs.

Petro Lewis, Lewis, Frawley, Jeffrey A. Chase, Holme Roberts & Owen, Strawn, Katz, Timothy, James M. Lyons, Frederick J. Baumann, Rothgerber, Appel, Powers & Johnson, Denver, Colo., Charles E. Davidow, Wilmer, Cutler & Pickering, Washington, D.C., Freeport–McMoRan, Inc., FPCO, Inc., Harry L. Hobson, Holland and Hart, Denver, Colo., William L. Rosoff, Davis Polk & Wardwell, New York City, for defendants.

### ORDER

CARRIGAN, District Judge.

Plaintiffs Kenin M. Spivak and Byron Goldman, former shareholders of defendant Petro–Lewis Company ("PLC") claim that they were forced to surrender their shares for inadequate consideration after the defendants effected a merger of PLC into defendant FPCO, Inc. ("FPCO"). FPCO, a subsidiary of defendant Freeport

McMoran, was formed to acquire PLC and American Royalty Trust ("ART"). Plaintiffs filed this action on their behalf and as a class action pursuant to Fed.R.Civ.P. 23 on behalf of all holders of common shares of PLC who were allegedly deprived of their equity interests in PLC by an investor group that included members of PLC's senior management.

Plaintiffs have filed a motion for class certification requesting that they be allowed to represent a class consisting of all shareholders of PLC common stock who purchased or otherwise held their shares on or after July 24, 1986. Defendants Freeport and FPCO have filed a memorandum in opposition to class certification arguing that the plaintiffs should not be permitted to represent the proposed class because: (1) the plaintiffs' claims are atypical of the class; and (2) the class would not be adequately represented by the plaintiffs. The issues have been fully briefed and oral argument on the plaintiffs' motion was heard on September 25, 1987.

PLC is an independent oil and gas producer and manager of petroleum investments for public and private partners, including ART. From October 1970 until February 1984, PLC's principal business was to acquire domestic oil and gas producing properties primarily to market them to public investors.

Apparently, at a time when oil prices were poised to increase, PLC announced that it had signed a Letter of Intent to be acquired (along with ART) by an investor group led by Freeport, members of PLC management, and Kidder, Peabody & Company. The transaction, whereby common shareholders would receive only 73 cents a share, was contingent upon: (1) tender of at least two-thirds of the units not owned by PLC; and (2) tender of at least ninety percent of the aggregate amount of each series of PLC's outstanding notes. Shortly after disclosure of the Letter of Intent, several lawsuits challenging the proposed transaction were commenced in this court.

In July, 1986, PLC, Freeport and FPCO entered into an agreement embodying the terms of the Letter of Intent. Plaintiffs

label the transaction "an egregious mutation of a management-led leveraged buyout" and contend that the defendants are liable for their preconceived, unified transaction to cash out PLC common stockholders at an unfair and coerced price. According to the plaintiffs, the defendants' buying up and "freezing out" of the members of the proposed class deprived them of the opportunity to share in the future growth and profit of PLC and ART.

Plaintiffs' Supplemental and Consolidated Class Action Complaint alleges that the defendants violated: (1) §§ 10(b), 14(a), and 14(e) of the Securities Exchange Act of 1934 ("Act"); (2) Colo.Rev.Stat. §§ 11–51–123 and 11–51–125; (3) common law duties of due care; and (4) common law fiduciary duties. Essentially, the plaintiffs claim that tender and proxy solicitations by FPCO regarding the acquisition of PLC suffered from material misrepresentations or omissions.

The primary distinction between the plaintiffs and the members of the proposed class is that whereas the former did not tender their shares pursuant to the tender offer made by FPCO, the majority of the proposed class members did. In fact, it appears undisputed that the plaintiffs Spivak and Goldman were not misled by the alleged misrepresentations in the tender offer materials. Rather, they claim that: (1) the alleged misstatements induced certain shareholders to tender their stock; and (2) the tendering of stock by those shareholders enabled the defendants to buy out the plaintiffs at an unfair price.

### Class Certification Requirements.

Whether a class may be certified is left to the discretion of the court. *Anderson v. City of Albuquerque*, 690 F.2d 796 (10th Cir.1982). However, in making a determination of whether a cause of action is suitable for resolution on a class-wide basis, a court must adhere to the provisions of Fed. R.Civ.P. 23. *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1412 n. 6 (D.C.Cir.1984). In making the certification decision, a court should remember that certification is conditional and may be altered, expanded, subdi-

vided, or vacated as the case progresses toward resolution on the merits. *See* Fed. R.Civ.P. 23(c)(1), 23(c)(4)(B); *Walsh v. Ford Motor Co.*, 106 F.R.D. 378, 387 (D.D.C. 1985). Because class certification is subject to later modification, a court should err in favor of, and not against, the maintenance of the class action. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

The party seeking to invoke Rule 23 carries the burden of demonstrating that all of the prerequisites to utilizing the class action procedure have been satisfied. 7A C. Wright & A. Miller & M.K. Kane, *Federal Practice and Procedure* § 1759, at 578 (2d ed. 1986); *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459 (10th Cir. 1974). More specifically, in order for an action to be maintained as a class action, it must first be established that the four requirements of Rule 23 are satisfied. Those requirements are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements are referred to as numerosity, commonality, typicality, and adequacy of representation.

Defendants concede that the requirements of numerosity and commonality have been met. However, they assert that the plaintiffs cannot satisfy the requirements of typicality and adequacy because the plaintiffs, unlike the majority of members of the proposed class, did not tender their shares, and therefore the plaintiffs' claims are different from those of the class members. *See East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members") (citations omitted).

Specifically, the defendants allege that the plaintiffs' claims differ from those of the proposed class because: (1) given the fact that the plaintiffs did not rely on the alleged misrepresentations in the tender offer materials, they lack standing to assert a claim for relief under § 14(e); (2) plaintiffs suffered no damage as a result of the tender offer; and (3) unlike the plaintiffs, the shareholders who tendered their shares pursuant to the tender offer cannot recover under § 14(a) for alleged misstatements in proxy materials that were issued after they tendered their shares.

### 1. *Typicality.*

Defendants' argument that the plaintiffs' claims are atypical of those of the members of the proposed class focuses on the defendants' contention that the plaintiffs lack standing under § 14(e), 15 U.S.C. § 78n(e). According to the defendants, the plaintiffs cannot recover under § 14(e) because: (1) a claim under § 14(e) only exists for shareholders who tendered their shares in reliance on alleged misstatements or omissions in tender offer materials, and the plaintiffs did not so rely; and (2) the plaintiffs did not suffer damages resulting from the alleged misrepresentations. In contrast, the plaintiffs insist that they can maintain a cause of action and have suffered damages cognizable under § 14(e).

Thus, the defendants contend that the plaintiffs' claim under § 14(e) differs from those of the class members because it lacks merit. Yet, the general rule is that a court, when determining whether it should grant certification to a class of plaintiffs, must not delve into the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 49 L.Ed.2d 732 (1974); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). A court is obliged to determine only whether the requirements of Rule 23 have been satisfied. *See Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3rd Cir.1970), *cert. denied* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed. 2d 290 (1970). However, in determining whether the requirements of Rule 23 have been met, it is often necessary to analyze

the substantive claims and defenses of the parties and the essential elements of those claims and defenses. *See Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149, 157 (W.D.Mo. 1977).

Section 14(e) is one of the 1968 Williams Act amendments to the Securities and Exchange Act of 1934. *Plaine v. McCabe*, 797 F.2d 713 (9th Cir.1986). Section 14(e) provides that:

> "It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made ... not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation."

*See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975) ("[t]he purpose of the Williams Act is to insure that public shareholders who are confronted with a cash tender offer for their stock will not be required to respond without adequate information"). It should be noted that in order to state a claim under § 14(e), a shareholder need not be a purchaser or seller of any securities, as is required under other anti-fraud provisions of the 1934 Act. *Plaine*, at 717.

Defendants argue that reliance is an essential element under § 14(e) and that "[a]s plaintiffs did not tender or sell their shares, they obviously cannot claim to have relied on the alleged misrepresentations with respect to a purchase or sale." (Defendants' memorandum, at 9).

*Hundahl v. United Benefit Life Insurance Co.*, 465 F.Supp. 1349, 1369 (N.D.Tex. 1979), appears to be on point and in direct support of the defendants' position that a nontendering shareholder who did not rely on alleged misstatements in the tender offer materials lacks standing under § 14(e). In *Hundahl*, the court granted summary judgment against plaintiffs who were challenging a tender offer, but who had not

tendered their shares. The court reasoned that the nontendering shareholders:

> "... were apparently aware of the alleged inadequacy of the price offered by Mutual for United Shares, and so were not misled into tendering their shares. The person for whom the Act's protection was intended, however, is the target company shareholder *who was misled* (or, arguably, who is a member of a class that was misled) by omissions or misrepresentations in the course of a tender offer. The Hundahls do not fall within that class; hence to accord them standing under section 14(e) would be to expand the scope of an act that the Supreme Court has indicated should receive a narrow construction." 465 F.Supp. at 1369 (emphasis added).

Plaintiffs contend that reliance is not a prerequisite to recovery under § 14(e). Plaintiffs' theory for recovery is that consummation of the tender offer, which was allegedly conducted through dissemination of false and misleading statements upon which tendering shareholders relied, enabled the defendants to cash out the remaining shareholders at an inadequate price. Therefore, the plaintiffs argue, their failure to tender or "rely" on misstatements made in connection with the tender offer is not a bar to recovery.

This is an appealing argument supported by case law. For example, in *Plaine*, 797 F.2d 713, the Ninth Circuit held that a shareholder who did not tender her shares in connection with a tender offer nevertheless had standing under § 14(e) to challenge alleged fraud in connection with the offer. As in this case, the defendants in *Plaine* argued that because the shareholder did not voluntarily tender her shares pursuant to the tender offer, she must not have relied on the alleged misstatements and could not have been damaged by them. In response, the plaintiff contended that she was injured because: (1) the other stockholders tendered shares in reliance on the false information; and (2) the success of the tender offer provided the defendant with the 83 percent share in the targeted company that eventually allowed the defendant to freeze out the plaintiff and ac-

complish the intended merger. The court concluded that the shareholder had a claim for relief under § 14(e) "[i]n light of the Act's goal of protecting investors...." *Id.* at 718.

Prior to *Plaine,* the Fifth and Second Circuits had already ruled that a nontendering shareholder had standing under § 14(e) to challenge fraudulent activities perpetrated in connection with a tender offer. *See Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 596 (5th Cir.1974), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *Electronic Specialty Co. v. Int'l Controls Corp.,* 409 F.2d 937, 946 (2nd Cir.1969). *See also McCloskey v. Epko Shoes, Inc.,* 391 F.Supp. 1279 (E.D. Pa.1975) (nontendering shareholder who was not a purchaser or seller of stock during the period of a tender offer has standing to challenge the tender offer under § 14(e)).

Moreover, in *Hurwitz,* 76 F.R.D. 149, where the defendants argued that the named plaintiffs in a securities-fraud class action did not subjectively rely on alleged misleading representations made by the defendants, the court held that the lack of reliance by the plaintiffs did not make the plaintiffs' claims atypical of a class of shareholders who may have relied on the misrepresentations.

The question that naturally arises is: How can *Plaine* and the other cases cited by the plaintiffs be reconciled with *Hundahl?* First, it should be noted that *Hundahl* did not entirely reject the holding of its circuit in *Smallwood* that a nontendering shareholder could sue under § 14(e). Instead, the *Hundahl* court finessed a distinction between: (1) a stockholder who did not tender his shares because he relied on misstatements in the tender offer materials; and (2) shareholders, such as the plaintiffs here and in *Hundahl,* who knew that the tender offer materials contained misrepresentations and therefore did not tender their shares. The court held that while the former class of shareholders had a claim under § 14(e), the latter did not because:

"The injury that the Hundahls seek to redress under section 14(e) is ... not the type at which the Williams Act was aimed. The Act was designed to prevent the injury suffered by a shareholder fraudulently induced to make an unwise response (tendering or not) to a tender offer." *Id.* at 1369.

Defendants also contend that the plaintiffs cannot assert a claim under § 14(e) because they suffered no damage as a result of the alleged misrepresentations in the tender offer materials. *See Milonas v. Williams,* 691 F.2d 931, 937 (10th Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983) ("[i]t is axiomatic that an uninjured plaintiff cannot bring suit on behalf of an injured class"). According to the defendants, the "[p]laintiffs' theory of injury evidently rests ... on the fact that the successful tender offer resulted in a merger" but "[c]ourts have consistently refused, ... to recognize a loss of control resulting from a successful tender offer as an injury redressable under § 14(e)." (Defendants' memorandum, at 13.)

In *Hundahl,* the nontendering-shareholder plaintiffs claimed that they had been injured by the successful completion of the tender offer because the offeror's ownership of 83 percent of the target company's stock had reduced the value of the plaintiffs' shares. The court, in holding that the plaintiffs lacked standing under § 14(e), stated that "[t]he claimed injury flows directly, if at all, from the successful completion of the tender offer, and only indirectly from alleged misstatements in the tender offer materials." 465 F.Supp. at 1370. Similarly, in *Shapiro v. Midwest Rubber Reclaiming Co.,* 626 F.2d 63 (8th Cir.1980), *cert. denied,* 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981), a case that also involved an effort by nontendering shareholders to represent a class that included tendering shareholders, the court upheld the district court's refusal to certify the class. The court found that nontendering stockholders " 'could have suffered no injury as a result of the alleged [unlawful] practices, and they were, therefore, simply not eligible to represent a class of persons

who did allegedly suffer injury.' " *Id.* at 71 (citation omitted).

Thus, it appears that under *Hundahl*, the defendants have a relatively strong argument that the plaintiffs' lack standing under § 14(e) and that the plaintiffs have suffered no damage redressable by § 14(e). Nevertheless, for purposes of this motion for class certification, I need not decide whether the plaintiffs have standing or suffered damages recoverable under § 14(e). Regardless of whether the plaintiffs might ultimately prevail on their claim of standing, it seems clear that they will have to devote considerable time and resources to litigation of the standing issue. The time and resources exerted on this issue will not inure to the benefit of the class, and may even detract from the representation of the class claims.

Thus, the plaintiffs have not met their burden of establishing that the claims of nontendering, nonrelying shareholders are typical of those of the tendering stockholders who relied on the tender offer. It is significant that the plaintiffs have failed to cite any case where the court certified a class consisting of both tendering and nontendering shareholders. Therefore, I conclude that the plaintiffs' claims are not sufficiently typical of those of the proposed class.

### 2. *Adequacy of representation.*

As a second ground for their request that this court deny the plaintiffs' motion for class certification, the defendants assert that the plaintiffs would not adequately represent the interests of the stockholders who tendered their shares in reliance on the tender offer materials. In *In re Storage Technology Corp. Securities Litigation,* 113 F.R.D. 113, 117 (D.Colo.1986), Judge Matsch of this court noted that "[t]he requirement that the class representative fairly and adequately protect the interests of the class may be regarded as a threshold question of constitutional dimension since it would violate due process to bind a class member to a ruling against inadequate class representatives."

Although the plaintiffs' motion for class certification must be denied because of the plaintiffs' failure to demonstrate that their claims were typical of those of the proposed class, discussion of the adequacy of representation requirement is helpful because several authorities have equated the typicality and adequacy requirements of Rule 23. *See, e.g., General Telephone Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982); 3b J. Moore, *Moore's Federal Practice* § 23.06–2, at 23–169 (2d ed. 1987); *see also Kas v. Financial General Bankshares, Inc.,* 105 F.R.D. 453, 461 (D.D.C.1984) ("[i]f the representatives' claims are not typical of the class, they cannot adequately protect the interests of the absent class members").

Defendants contend that representation by the plaintiffs would be inadequate because the plaintiffs: (1) are subject to unique defenses that would prejudice the class; (2) are pursuing a claim under § 14(a) of the Act for alleged misstatements and omissions in a proxy statement and this claim is not available to the stockholders who tendered their shares prior to issuance of that statement; and (3) have interests that conflict with the proposed class.

More specifically, the defendants assert that the plaintiffs will not be able to vigorously prosecute the proposed class members' claims because the plaintiffs' energies will be absorbed in rebutting the defendants' contention that the plaintiffs lack standing under § 14(e). Defendants characterize their "no standing" argument as a defense "unique" to the plaintiffs, *i.e.,* the plaintiffs do not assert this defense against the tendering shareholders. *See Masri v. Wakefield,* 106 F.R.D. 322, 325 (D.Colo. 1984) ("[t]here is concern that the representation of the class will suffer as the representative becomes distracted by the presence of possible defenses applicable only to him").

Inadequate representation, the defendants contend, would also result if the plaintiffs' motion for certification is granted, because the plaintiffs are alleging a claim under § 14(a) of the Act, 15 U.S.C. § 78n(a), for misstatements and omissions

allegedly made in proxy statements issued by the defendants. Defendants insist that the § 14(a) claim is inapplicable to those proposed class members who tendered their shares before April 1987, when the first proxy statement was issued. According to the defendants, any time, effort and expense devoted by the plaintiffs to prosecuting the § 14(a) claim could not benefit the members of the class who tendered pursuant to the tender offer and would even detract from presentation of the tendering shareholders' claims.

Plaintiffs seek to rebut this argument by insisting that prosecution of the § 14(a) claim will benefit the class at large because the § 14(a) allegations are related to and parallel the § 14(e) claims. In support, the plaintiffs assert that:

"Proof by plaintiffs of the existence and materiality of misrepresentations in and omissions from the proxy materials will assist in proving the existence and materiality of parallel misrepresentations in and omissions from materials disseminated in connection with the Tender Offer." (Plaintiffs' reply memorandum, at 29.)

Additionally, the plaintiffs reiterate their position that the defendants committed a "preconceived, unified transaction" to cash out PLC stockholders and that both the § 14(a) and § 14(e) allegations arise out of that transaction.

Defendants' final argument in support of their contention that the plaintiffs would not adequately represent the interests of the proposed class is that the plaintiffs' pecuniary interests differ from those of the tendering shareholders. Specifically, the defendants assert that because the plaintiffs cannot state a claim for relief under § 14(e), they would be willing to accept a settlement detrimental to the proposed class.

Plaintiffs respond that no conflict of interest exists. They contend that the measure of damages for the entire proposed class is the same: The difference between what the plaintiffs prove was the real value of the shares and the 73 cent per share paid to both the tendering and nontendering shareholders. (Plaintiffs' reply memo-

randum, at 32–33). As the court observed in *Hurwitz v. R.B. Jones*, 76 F.R.D. 149 (W.D.Mo.1977):

"[I]t is in the interests of all members of the class, tenderers and nontenderers alike, to prove that, but for the allegedly fraudulent acts and omissions of the defendants, the value of their shares of stock would be worth substantially more than they are presently worth (in the case of nontendering members of the class) or that they were worth more than the $6.00 paid by the corporation (in the case of tendering members of the class). A difference, but not a conflict, exists." *Id.* at 163–64.

Rule 23 imposes on a trial judge the duty to assure that a class action is an appropriate means of resolving the controversy and that the representative parties will fairly and adequately protect the interests of the class. *Bernard v. Gulf Oil Co.*, 596 F.2d 1249 (5th Cir.1979), *aff'd*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Plaintiffs contend that they are seeking the greatest possible recovery for both tendering and nontendering shareholders of PLC and that they will vigorously prosecute all of the class claims. Yet, I am unpersuaded that the plaintiffs would adequately represent the proposed class.

As discussed above, the plaintiffs will need to devote considerable resources to their claim of standing under § 14(e) and their allegations under § 14(a). Plaintiffs expenditure of resources on these issues would likely detract from their representation of the class. Additionally, I am not convinced that the plaintiffs' motivation to accept a particular preferred settlement would be coextensive with the interests of the tendering shareholders. In the settlement bargaining process, there might well be temptations to favor one sub-class against the interests of the other.

In sum, I conclude that the plaintiffs' have not met their burden with respect to the typicality and adequacy requirements of Rule 23.

Accordingly, it is ordered that the plaintiffs' motion for class certification is denied.

## FINAL JUDGMENT AND ORDER

These class actions, conditionally certified by the Court to be maintained as such under Rule 23 of the Federal Rules of Civil Procedure, were proposed to be compromised pursuant to a Stipulation and Agreement of Compromise and Settlement between plaintiffs and defendants, dated April 1, 1988 (the "Stipulation"). Pursuant to Rule 23, the parties applied to the Court for approval of the settlement as fair, reasonable and adequate and for the entry of judgment thereon.

In accordance with the order dated May 12, 1988 (the "Order"), a hearing was held on July 1, 1988 (the "Hearing") to determine whether the settlement is fair, reasonable and adequate and should be approved and the action dismissed on the merits and with prejudice against plaintiffs and the Classes defined below.

Notice of hearing was given in accordance with the Order prescribing and directing the mode and form of notice to be given to the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure.

At the Hearing pursuant to the Order, proof of mailing and publication of notice to the Classes concerning the hearing on the proposed settlement, as directed in the Order, was filed.

The Court having determined that the notice of hearing by mail and publication was adequate and sufficient and the Court having found the settlement to be fair, reasonable, and adequate, it is hereby

ORDERED AND ADJUDGED that:

1. These actions were properly brought and maintained as class actions on behalf of the members of the Classes described below, and plaintiffs have fairly and adequately represented the Classes.

2. The Shareholder Settlement Class consists of all persons who held PLC shares on or after July 24, 1986, except defendants, subsidiaries or affiliates of any defendant, their spouses, children, agents, nominees, or any other persons or entities within the control of such persons, with such class being divided into a subclass of all persons who tendered their PLC common stock pursuant to the tender offer by FPCO Inc. commenced August 7, 1986 ("Common Stock Tender Offer"), and subclass of all persons who held PLC common stock on or after July 24, 1986 and did not tender their PLC stock pursuant to the Common Stock Tender Offer.

3. The Unitholder Settlement Class consists of all persons who held ART units on or after July 24, 1986, except defendants, subsidiaries or affiliates of any defendant, their spouses, children, agents, nominees, or any other persons or entities within the control of such persons, with such class being divided into subclass of all persons who tendered their ART Units pursuant to the tender offer by FPCO, Inc. commenced on August 7, 1986 ("Unit Tender Offer"), a subclass of all persons who tendered their ART Units pursuant to the exchange offer by Freeport McMoRan Energy Partners Ltd. for outstanding ART Units commenced on August 5, 1987 (the "FMP Exchange Offer"), and a subclass of all persons who held ART Units on or after July 24, 1986 and did not tender their ART Units pursuant to the Unit Tender Offer or the FMP Exchange Offer.

4. The settlement is in all respects fair, reasonable, adequate, and proper, and in the best interests of the Shareholder Class and Unitholder Class and is approved.

5. Notice to the Classes required by Rule 23 of the Federal Rules of Civil Procedure has been given in adequate and sufficient manner complying in all respects with the requirements of such Rules and with due process.

6. The parties hereto shall consummate the settlement as set forth in and subject to the terms and provisions of the Stipulation.

7. The Shareholder Complaint and the Supplemental Unitholder Complaint and all claims of every nature and description that have been or could have been asserted on behalf of the named plaintiffs in the Shareholder Action and the Unitholder Action, the Shareholder Class and the Unitholder Class and any members thereof who have not requested exclusion against defendants, and each of them, and their respective predecessors, heirs, successors, assigns

and the present and former officers and directors, attorneys, agents and employees of any of them, including all claims in any way relating to or arising out of or in connection with any of the transactions, matters or occurrences or series of transactions, matters or occurrences set forth or referred to in the Shareholder Complaint and the Supplemental Unitholder Complaint are dismissed on the merits with prejudice and without costs to any party; provided, however, that nothing in this Stipulation of Settlement shall preclude those shareholders who have perfected their dissenters' rights pursuant to Colorado law from pursuing whatever rights to appraisal may be available to them under Colorado law.

8. This order and judgment bars and permanently enjoins the prosecution by plaintiffs, the Shareholder Class and the Unitholder Class and any members thereof who have not requested exclusion against defendants, and each of them, and their respective predecessors, heirs, successors, assigns and the present and former officers and directors, attorneys, agents and employees of any of them, of all claims of every nature and description that have been or that could have been asserted on behalf of the named plaintiffs in the Shareholder Action and the Unitholder Action, the Shareholder Class and the Unitholder Class and any members thereof who have not requested exclusion, including all claims in any way relating to or arising out of or in connection with any of the transactions, matters or occurrences or series of transactions, matters or occurrences set forth or referred to in the Shareholder Complaint and the Supplemental Unitholder Complaint; provided, however, that nothing in this Stipulation of Settlement shall preclude those shareholders who have perfected their dissenters' rights pursuant to Colorado law from pursuing whatever rights to appraisal may be available to them under Colorado law.

9. Plaintiffs' counsel are awarded $1,255,152.70 for counsel fees and $94,847.30 for reimbursement of expenses for work performed in this matter and for the benefits secured for the Classes by this settlement.

10. Jurisdiction is hereby reserved as to all matters relating to the effectuation of the Stipulation including without limitation the resolution of disputes concerning the distribution of payments to Entitled Shareholder and Unitholder Claimants (as those terms are defined in the Stipulation) pursuant to the Plan of Distribution.