**Alan R. KAHN, Thomas G. Kahn, and Donald W. Kahn, Tenants in Common, the Royce Fund, Royce Value Trust, Inc., and Pennsylvania Mutual Fund, Inc., Plaintiffs**

**v.**

**LYNDEN INCORPORATED, Henry Jansen, C.E. McLaughlin, Riley W. Pleas, James H. Jansen, Frank X. Chapados and Paul W. Steere, Defendants.**

**No. C87–1433Z.**

United States District Court,
W.D. Washington,
at Seattle.

Jan. 23, 1989.

1459

Richard Yarmuth of Culp, Guterson & Grader, Seattle, Wash., for plaintiffs.

Delbert D. Miller of Bogle & Gates, Seattle, Wash., for defendants Jansen and Steere.

Karl J. Quackenbush of Shidler, McBroom, Gates & Lucas, Seattle, Wash., for defendants McLaughlin, Chapados and Pleas.

## ORDER DENYING SUMMARY JUDGMENT AND GRANTING CLASS CERTIFICATION

ZILLY, District Judge.

THIS MATTER comes before the Court on the objections of the Lynden defendants (Lynden, Inc., Henry Jansen, James H. Jansen and Paul W. Steere) to the Report and Recommendation ("Report") of Magistrate Sweigert dated November 14, 1988. The Lynden defendants challenge the Magistrate's conclusions that their motion for summary judgment[1] should be denied and that the plaintiffs' motion for class certification should be granted. Having considered the parties' memoranda submitted to this Court following the Magistrate's Report, as well as reviewing de novo the underlying motions, memoranda, affidavits and exhibits submitted to the Magistrate, and having heard oral argument of counsel, the Court ACCEPTS but MODIFIES the Magistrate's recommendations, DENIES the Lynden defendants' motion for summary judgment and GRANTS the plaintiffs' motion for class certification.

1. Defendants C.E. McLaughlin, Riley W. Pleas and Frank X. Chapados join the Lynden defendants' motion for summary judgment.

**1460**

### A. Discussion of Defendants' Motion for Summary Judgment

#### 1. *Background*

The defendants do not dispute the Magistrate's statement of facts, but argue that the Report rests on legal errors. The plaintiffs also accept the Magistrate's statement of facts. Accordingly, the Court adopts and incorporates by reference the "Factual Background" of the Report, at 2–3.

Specifically, the plaintiffs allege that the tender offer presented to the public shareholders did not disclose valuations of the Company's stock higher than the price offered, which was $27.50. Complaint, paras. 13–21. These higher valuations had been reached by the investment banking firm that defendants had selected to advise the public shareholders, Boettcher & Co., Inc., as well as by three other investment banking firms that had expressed opinions to the defendants. Complaint, paras. 12–15. The plaintiffs learned of the nondisclosed valuations during discovery in a state court lawsuit that they filed in late August 1987, seeking to enjoin the going private transaction. The plaintiffs' motion for a preliminary injunction in the state court action was denied on September 23, 1987. On September 30, 1987, the plaintiffs were informed that a majority of the public shareholders had tendered their stock, triggering the second step of the transaction, by which the remaining shareholders' common stock would be exchanged in a merger for cash at the same price per share, $27.50, as the tendering shareholders had received, and making the going private transaction a certainty. Complaint, paras. 7, 22; Report, at 2–3. The plaintiffs tendered their shares on and after September 30, 1987, and they filed the present action on October 15, 1987.

#### 2. *Summary Judgment Standard*

On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party (the plaintiffs in this case). The Court must determine whether there is a genuine issue as to any material fact and, if not, whether the defendants are entitled to judgment as a matter of law. *Learned v. Bellevue*, 860 F.2d 928 (9th Cir.1988); *California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

#### 3. *Causation and Reliance under Section 10(b)*

Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated under section 10(b) of the Act, 15 U.S.C. § 78a, makes illegal three categories of conduct:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

*in connection with* the purchase or sale of any security.

(Emphasis added.) Rule 10b–5 is silent on causation; however, some causal connection between a defendant's misconduct and a plaintiff's loss has historically been required for private recovery under Rule 10b–5, and this requirement is based on the phrase "in connection with". 4 A. Bromberg & L. Lowenfels, *Securities Fraud & Commodities Fraud* § 8.7(1), at 213 (1967 & 1988).

Rule 10b–5 also says nothing about reliance. Direct proof of reliance is not always necessary for a cause of action under the Rule. 4 Bromberg § 8.6(1), at 209; § 8.6(600), at 8:801–09 *et seq.; Basic Inc. v. Levinson*, 485 U.S. ——, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (Court approves "fraud-on-the-market" theory). In *Basic*, the Court stated:

We agree that reliance is an element of a Rule 10b–5 cause of action. Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury. There is, how-

ever, more than one way to demonstrate the causal connection. Indeed, we previously have dispensed with a requirement of positive proof of reliance, where a duty to disclose material information had been breached, concluding that the necessary nexus between the plaintiffs' injury and the defendant's wrongful conduct had been established. See *Affiliated Ute Citizens v. United States*, 406 U.S. [128] at 153–54, 31 L.Ed.2d 741, 92 S.Ct. 1456[, 1472 (1972)]. Similarly, we did not require proof that material omissions or misstatements in a proxy statement decisively affected voting, because the proxy solicitation itself, rather than the defect in the solicitation materials, served as an essential link in the transaction. See *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 384–85, 24 L.Ed.2d 593, 90 S.Ct. 616[, 621–22] (1970).

485 U.S. at ——, 108 S.Ct. at 989, 99 L.Ed.2d at 215–16 (citations omitted). Similarly, in *Blackie v. Barrack*, 524 F.2d 891, 907 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976), the court said:

Here, we eliminate the requirement that plaintiffs prove reliance directly in this context because the requirement imposes an unreasonable and irrelevant evidentiary burden. A purchaser on the stock exchanges may be either unaware of a specific false representation, or may not directly rely on it; he may purchase because of a favorable price trend, price earnings ratio, or some other factor. Nevertheless, he relies generally on the supposition that the market price is validly set and that no unsuspected manipulation has artificially inflated the price, and thus indirectly on the truth of the representations underlying the stock price—whether he is aware of it or not, the price he pays reflects material misrepresentations.

Although the facts of this case suggest a fraud-on-the-market theory, at oral argument, plaintiffs' counsel rejected the fraud-on-the-market approach as a vehicle for their cause of action and asserted that this case "goes beyond" that approach. The fraud-on-the-market theory allows a rebut-

table presumption of reliance to attach in certain circumstances. *See Basic*, 485 U.S. at —– – —–, 108 S.Ct. at 988–992, 99 L.Ed.2d at 215–19. Even if those circumstances were present in this case, however, the presumption has been rebutted by the plaintiffs' nonreliance: the plaintiffs did not rely on the market or its integrity when they tendered their shares; they were not themselves deceived by any alleged scheme, course of conduct or manipulation of the price of the stock; they knew of the alleged fraud and nevertheless tendered. *See Basic*, 485 U.S. at ——, 108 S.Ct. at 992, 99 L.Ed.2d at 219 ("[a]ny showing that severs the link between the alleged misrepresentation and either the price received ... by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance"); *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1283, 1284 n. 11 (9th Cir.1982) ("[a] finding of nonreliance implies that plaintiffs would have acted no differently had they known the truth"; the defendant "can defend by proving nonreliance"); *Blackie*, 524 F.2d at 906.

The requirement of reliance has been avoided in "forced sale" cases. The forced sale doctrine was first recognized in *Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir.), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), and has been adopted by the Ninth Circuit. *Mosher v. Kane*, 784 F.2d 1385, 1389 (9th Cir.1986), *overruled on other grounds, In re Washington Public Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1351 (9th Cir.1987). In *Vine*, the appellant, a minority shareholder of Class A common stock in a Delaware corporation, alleged a "scheme ... to defraud" and a "course of business which ... would operate as a fraud" in connection with a tender offer that was followed by a short form merger. The appellee, the Beneficial corporation, purchased Class B stock from the directors of the target corporation and then made a public offer or tender to acquire ninety-five percent of the outstanding shares of the target corporation. Under the statutory short form merger procedure, acquiring ninety-five percent of the

corporation's shares authorized Beneficial to merge the target corporation into Beneficial without approval of the target's Class A shareholders, including the appellant. 374 F.2d at 631, 633. The "frozen out" shareholders would then have an opportunity to obtain the fair value of their shares, either by agreement with Beneficial or by a judicial appraisal. 374 F.2d at 633–34. The court held that, although the appellant retained his Class A shares, he was a seller and had a claim under the Securities Exchange Act of 1934. 374 F.2d at 635. The court rejected Beneficial's defense that the appellant was not deceived when he did not sell:

> This ignores the simple fact that appellant would never be in the position of a forced seller were it not for the fraud. In essence, because of the distinctive nature of the short form merger procedure, appellee by deceiving A can cause B to become a seller. When this is all part of a single fraudulent scheme and that scheme is a classic example of deception of an entire class of Class A public stockholders, as alleged here, we think the policies of section 10(b) and Rule 10b–5 justify holding that fraud on A is "in connection with" the forced sale by B.... Whatever need there may be to show reliance in other situations, we regard it as unnecessary in the limited instance when no volitional act is required and the result of a forced sale is exactly that intended by the wrongdoer. Since the complaint alleges that plaintiff, in effect, has been forced to divest himself of his stock and this is what defendants conspired to do, reliance by plaintiff on the claimed deception need not be shown. What must be shown is that there was deception which misled Class A stockholders and that this was in fact the cause of plaintiff's claimed injury.

374 F.2d at 635 (citations omitted). As the Ninth Circuit characterizes the rule of *Vine,*

> the doctrine provides that where a defendant is engaged in a scheme for the purpose of forcing the plaintiffs to convert their shares for money or other consideration, such acts by the defendant

allow a plaintiff standing to sue under the securities act. Thus, where there has been a fundamental change in the nature of the plaintiff's investments, a forced sale will be deemed to have occurred.

*Mosher,* 784 F.2d at 1389 (citations omitted; refusing to apply the doctrine because plaintiffs failed to allege that an actual liquidation of their investment occurred or that there was a fundamental change in the nature of their investments); *see also Shivers v. Amerco,* 670 F.2d 826, 830 (9th Cir. 1982) (distinguishing *Vine* on the ground that the plaintiffs were not forced to sell their stock: they could have held the stock in hopes that it would increase in value); *see generally* Annotation, *Who is "Forced Seller" for Purposes of Maintenance of Civil Action under § 10(b) of Securities Exchange Act of 1934 ... and SEC Rule 10b–5,* 59 A.L.R.Fed. 10 (1982); *Clayton v. Skelly Oil Co.,* 1977–78 Fed.Sec.L.Rep. ¶ 96,269 (S.D.N.Y.1977) (plaintiffs who voted against merger but took no other action to block it and were not personally deceived by defendants' fraud could maintain an action under the securities laws since the deception of others may have caused damage to them; plaintiffs' personal reliance was "irrelevant to establish causation" of their injury).

The forced sale doctrine is applicable to the factual allegations in this case. The plaintiffs, who owned stock in the Lynden corporation, allege that the defendants' misrepresentations and omissions caused a majority of the public shareholders to tender their stock, thereby binding nontendering shareholders to the second step of the going private transaction, the "cash-out" merger. The plaintiffs contend that they were forced by the defendants' fraud into either accepting the same price for their stock as the tendering shareholders or pursuing their appraisal remedy. There was a fundamental change in the nature of the plaintiffs' investments, and they have standing to sue under section 10(b) and Rule 10b–5. This result is consistent with the principle that " '[§] 10(b) must be read flexibly, not technically and restrictively'

and that the statute provides a cause of action for any plaintiff who 'suffers an injury as a result of deceptive practices touching its sale ... of securities....'" *Santa Fe Inds., Inc. v. Green*, 430 U.S. 462, 475–76, 97 S.Ct. 1292, 1301–02, 51 L.Ed.2d 480, 493 (1977) (quoting *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 168–69, 30 L.Ed.2d 128 (1971)).

Instead of citing *Vine* or any of the forced sale cases, the plaintiffs premised their action on the theory of "indirect reliance" articulated in *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278 (9th Cir.1982). The *Bell* court allowed the plaintiffs to take their case to the jury, stating that the plaintiffs there would be able to establish causation if the alleged misstatements and omissions caused other shareholders to tender 80 percent of the outstanding shares and the success of the tender offer then caused the plaintiffs to tender their shares as well. 669 F.2d at 1284. In *Bell*, however, the defendant had not attempted to show the plaintiffs' nonreliance by the time the summary judgment motion was heard. 669 F.2d at 1284 n. 11. In this case, the plaintiffs admit their nonreliance and knowledge of the alleged wrongdoing. The decision in *Bell* is based on cases permitting a presumption of reliance under either *Ute* (presumption may attach in nondisclosure cases) or the fraud-on-the-market approach, but the court stated that the defendant could rebut the presumption by proving nonreliance. 669 F.2d at 1283, 1284 n. 11. *Bell* does not clearly resolve the issue before this Court.

■ The parties have focused their discussion on the significance of the plaintiffs' nonreliance, and the Court has determined that the plaintiffs' nonreliance in these circumstances does not defeat their cause of action under the securities laws. The Court concludes that genuine issues of material fact remain as to whether the defendants' misrepresentations or omissions caused the tender offer to be successful, thereby changing the nature of the plaintiffs' investments and resulting in the plaintiffs' alleged damages. Consequently, the defendants have not met their burden of showing that they are entitled to judgment as a matter of law and their motion for summary judgment dismissing the plaintiffs' claims under section 10(b) and Rule 10b–5 must be DENIED.

### 4. Sections 14(e) and 13(e)

Relying on *Plaine v. McCabe*, 797 F.2d 713 (9th Cir.1986), the plaintiffs contend that it is not necessary for them to establish reliance on the defendants' misrepresentations or omissions in order to assert a claim under section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e).[2] The defendants contend that standing is not the question and that the plaintiffs' claim should be dismissed because they did not rely on the alleged misstatements or omissions and cannot establish causation. In *Plaine*, the court held that the nontendering plaintiff in that case had standing to claim a violation of section 14(e), based on her specific allegation that she was injured as a result of fraudulent activity in connection with a tender offer. 797 F.2d at 718. The court permitted the nontendering shareholder to bring her section 14(e) claim in light of the purpose of the Williams Act, which "'is to insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information....'" 797 F.2d at 717 (and cases cited therein).

■ The same purpose is served by permitting the plaintiffs to bring their section 14(e) claim here. While the plaintiffs them-

**2.** Section 14(e) provides:
It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

To state a violation of section 14(e), a shareholder need not be a purchaser or seller of any securities. *Plaine*, 797 F.2d at 717.

selves had adequate information, their cause of action is based on the allegation that the other public shareholders did not and that the defendants' fraud consequently caused the majority to tender and assured the success of the tender offer, forcing the plaintiffs to sell and resulting in their injury. *See Plaine,* 797 F.2d at 718. As in *Plaine,* the plaintiffs' nonreliance does not negate their allegations of causation and injury. *See* 797 F.2d at 717–18; *see also Panter v. Marshall Field & Co.,* 646 F.2d 271, 282 (7th Cir.) (courts construe claims under Rule 10b–5 and section 14(e) *in pari materia*), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981); 4 Bromberg § 8.4(447), at 204.81 ("tender offers can have collective effects such as squeezeouts.... In instances of this sort, a security holder's knowledge should not bar his suit for violation of § 14(e)").

■ The Court recognizes that other courts have dismissed claims brought under section 14(e) for failure to establish reliance on the alleged misstatements or omissions, under circumstances distinguishable from those present here. *See, e.g., Coronet Ins. Co. v. Seyfarth,* 665 F.Supp. 661, 669 (N.D.Ill.1987); *Panter,* 646 F.2d at 285; *Hundahl v. United Benefit Life Ins. Co.,* 465 F.Supp. 1349, 1369 (N.D.Tex.1979). However, in addition to the factual distinctions in each of these cases, the plaintiffs there, unlike the plaintiffs in this case, failed to allege causation for their injuries. The plaintiffs in this action have raised genuine issues of material fact regarding causation under section 10(b) and Rule 10b–5. Based on *Plaine* and for the reasons stated above, summary judgment dismissing the plaintiffs' section 14(e) claim is also DENIED.

■ The parties have barely addressed the plaintiffs' claim under section 13(e) of the Securities Exchange Act, 15 U.S.C. § 78m(e),[3] and Rule 13e–3(b)(1), 17 C.F.R. § 240.13e–3(b)(1), promulgated under sec-

tion 13(e). Assuming for the purpose of this motion that a private right of action exists under section 13(e), the Court notes that Rule 13e–3(b)(1) "is virtually identical to Rule 10b–5...." *Howing Co. v. Nationwide Corp.,* 826 F.2d 1470, 1480 (6th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988). Based on the apparent similarity of the law under section 13(e) and section 10(b) and the dependence of a section 13(e) claim on the contravention of other SEC rules, summary judgment dismissing plaintiffs' claim under section 13(e) is DENIED.

#### 5. Pendent State Claims

Since the defendants' motion for summary judgment is denied, the Court retains the plaintiffs' cause of action for breach of fiduciary duty under common law. *See* Complaint, paras. 23–24.

### B. Class Certification

The Ninth Circuit has taken a liberal view of class certification motions brought in securities cases. *See, e.g., Blackie v. Barrack,* 524 F.2d 891, 903 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *In re Computer Memories Sec. Litig.,* 111 F.R.D. 675, 679 (N.D. Cal.1986). The court in *Blackie* noted that securities litigation is particularly well-suited for class action treatment. 524 F.2d at 902–04. Certification is conditional and may be altered, expanded, subdivided, or vacated as the case progresses. Fed.R.Civ. P. 23(c)(1); *Spivak v. Petro-Lewis Corp.,* 120 F.R.D. 693, 694–95 (D.Colo.1987). Having reviewed the materials submitted in support of and in opposition to the plaintiffs' motion for class certification, in light of this liberal view, the Court ACCEPTS and MODIFIES the Magistrate's Report concerning the motion, at pages 7–10, and conditionally certifies the class of all public shareholders.

---

**3.** Under section 13(e) of the Securities Exchange Act of 1934, a company that has issued publicly traded stock is prohibited from buying it back if such purchase is in contravention of rules and regulations promulgated by the SEC defining fraudulent, deceptive, or manipulative acts and

practices and prescribing means to prevent such acts and practices. 15 U.S.C. § 78m(e)(1); *Howing Co. v. Nationwide Corp.,* 826 F.2d 1470, 1471 (6th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988).

■ The defendants' primary challenges to class certification are that the plaintiffs' claims are not typical of the class and that the plaintiffs will not adequately represent the interests of the class.[4] The plaintiffs and the other public shareholders are in fact different in that the plaintiffs were allegedly "forced" to sell rather than directly misled by the defendants' alleged fraud, while the remaining public shareholders were allegedly deceived and defrauded. However, the plaintiffs' contention that they were forced to sell is founded on their claim that the remaining public shareholders were defrauded; without proof that the absent class members were defrauded and that the fraud caused the success of the tender offer, the plaintiffs' allegations of causation cannot succeed. The plaintiffs' claims are thus typical of the claims of the entire class; the plaintiffs are adequate representatives, and their interests are not antagonistic to those of the class.[5] The Magistrate's characterization of the common interest of the class at page 8, lines 16–21, is restated.

■ The Court further finds that the requirements of Fed.R.Civ.P. 23(a) are satisfied as to the pendent state claim of breach of fiduciary duty, which duty was owed to all public shareholders. This claim will presumably rest on substantially the same proof as the plaintiffs' federal causes of action. The questions are common to the class, the plaintiffs' claim is typical of the class, and the representatives will adequately protect the interests of the class. *See Cameron v. E.M. Adams & Co.,* 547 F.2d 473, 478–79 (9th Cir.1976).

■ The defendants' contention that the plaintiffs are subject to the defense of nonreliance and that this should require the Court to deny certification is without merit. Where reliance has been presumed in securities class actions, individual questions of reliance or the fact that a class representative may not have directly relied on the offering materials will not disqualify the representative or defeat the certification of a class. *See, e.g., Blackie v. Barrack,* 524 F.2d at 907 n. 22; *In re Computer Memories Sec. Litig.,* 111 F.R.D. at 680; *In re Activision Sec. Litig.,* 621 F.Supp. 415, 429, 431 (N.D.Cal.1985). Moreover, here, the plaintiffs' nonreliance is not only conceded, it is irrelevant to their theory.

■ Finally, the plaintiffs' sophistication does not disqualify them as class representatives in view of the common questions and interests of the class. *See, e.g., Blackie,* 524 F.2d at 905; *Weinberger v. Jackson,* 102 F.R.D. 839, 845 (N.D.Cal.1984), *clarified and reaffirmed on reliance issue, In re Seagate Technologies Sec. Litig.,* 115 F.R.D. 264, 270–71 (N.D.Cal.1987).

■ In addition to satisfying the provisions of Fed.R.Civ.P. 23(a), the plaintiffs must also meet one of the requirements of Fed.R.Civ.P. 23(b). They seek certification under section b(3), which requires the Court to find:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The Court adopts the Magistrate's findings that these requirements are met. The Court has also considered the factors set forth in Rule 23(b)(3) and finds them satisfied. There is no showing that any class members will have an interest in individually controlling the prosecution of the securities fraud and breach of fiduciary duty claims at issue in the present case. The state court litigation has been stayed pending a determination of whether this case should proceed. The appraisal action does

---

4. Under Fed.R.Civ.P. 23(a), class certification may be granted only if
(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties

will fairly and adequately protect the interests of the class.

5. Several authorities have equated the typicality and adequacy requirements of Rule 23. *Spivak v. Petro–Lewis Corp.,* 120 F.R.D. 693, 698 (D.Colo.1987).

not negate the class members' securities fraud claims. *See Vine v. Beneficial Finance Co.*, 374 F.2d 627, 635–36 (2d Cir. 1967); *see also Plaine*, 797 F.2d at 722 (the issue of fairness in a state proceeding is not identical to the question of value to be determined in the federal court under section 14(e)). The difficulties in the management of this action do not appear to be insurmountable.

However, there is little evidence of who the remaining public shareholders are, how many will choose to remain in the class, or whether they are subject to individual defenses. Accordingly, the plaintiffs' motion for class certification is GRANTED, but the class is CONDITIONALLY CERTIFIED pursuant to Fed.R.Civ.P. 23(c)(1), and the Court will review these considerations as the case progresses.

C.  Conclusion

1.  The Magistrate's Report and Recommendation is ACCEPTED AND MODIFIED BY THIS OPINION.

2.  The defendants' motion for summary judgment dismissing the plaintiffs' claims is DENIED.

3.  The plaintiffs' motion for class certification is GRANTED. A status conference is set for Tuesday, February 7, 1989 at 4:30 p.m. The parties are directed to be prepared to discuss the procedure to be followed in notifying the class according to Fed.R.Civ.P. 23(c)(2).

4.  The trial date and all previous pretrial deadlines are hereby STRICKEN. The Court will set a new trial date at the time of the status conference and enter a new scheduling order after the new trial date is set.

IT IS SO ORDERED.